255 N.J. Super. 407 (1992)
605 A.2d 301
DONALD FLAHERTY, JR. AND PATRICIA FLAHERTY, HIS WIFE, PLAINTIFFS,
v.
THE ENCLAVE, THE ENCLAVE CONDOMINIUM ASSOCIATION, ITS AGENTS, SERVANTS AND EMPLOYEES, AND HOWARD CORWIN, FRANK CHECCHIA, WALTER GUTHEIL, RALPH PASQUA AND MARVIN DESSNER, THE BOARD OF DIRECTORS OF THE ENCLAVE CONDOMINIUM ASSOCIATION, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided February 28, 1992.
*410 Carmen R. Faia, Atty. for plaintiffs.
Scott Goldfinger, Francis & Berry, Atty. for defendants.

OPINION
WINKELSTEIN, J.S.C.
In this case the court is asked to interpret a provision of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq., hereinafter CEPA.
The matter is before the court on a motion by defendant for summary judgment. Plaintiff Donald Flaherty, Jr., hereinafter plaintiff, was an employee of defendant Enclave Condominium Association, hereinafter defendant, and director of security until September 15, 1990. He had an employment agreement with defendant pursuant to which he could only be discharged for cause. The allegations are that he was improperly discharged.
The complaint consists of eight counts, each seeking alternative relief.
The motion seeks to dismiss all but the fourth count, which seeks relief under CEPA. Defendant relies on N.J.S.A. 34:19-8, which reads as follows:
Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law. (Emphasis supplied).
Defendant argues that once an action is instituted under CEPA, plaintiff is precluded from seeking alternative relief.
A party opposing a motion for summary judgment is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, *411 74-75, 110 A.2d 24 (1954). There are no material facts in dispute.
It is well recognized that statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as "consonant to reason and good discretion." Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959). In construing a statute, it is assumed that the Legislature intended a reasonable approach, and a statute should be construed to effect a reasonable approach. Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969). The spirit of the legislative direction prevails over the literal sense of the terms. Bradley v. Rapp, 132 N.J.Super 429, 433, 334 A.2d 61 (App. Div. 1975), quoting from New Capitol Bar & Grill Corp. v. Div. of Employment Security, 25 N.J. 155, 160, 135 A.2d 465 (1957).
Defendant argues that once plaintiff institutes his CEPA claim, he is required to waive all of his remaining rights and remedies against defendants arising out of the employment relationship. This appears, however, to be an overly broad construction of the statutory language.
The legislation was adopted to prohibit retaliatory action by an employer against an employee who discloses illegal activities on the part of the employer. It prohibits the firing, suspension or demotion of an employee who discloses wrongdoing or illegal activity, who testifies before a public body concerning illegal activity, or who refuses to participate in an action which he or she believes to be in violation of the law. Statement to Senate Bill 1105, L-1986, L. 105. In a news release issued by Governor Thomas H. Kean on Monday, September 8, 1986, in conjunction with the signing of CEPA, it was noted that:
`It is most unfortunate  but, nonetheless, true  that conscientious employees have been subjected to firing, demotion or suspension for calling attention to illegal activity on the part of his or her employer,' Kean said.
`It is just as unfortunate that illegal activities have not been brought to light because of the deep-seated fear on the part of an employee that his or her livelihood will be taken away without recourse,' the Governor said.
*412 It is clear that the intent of the bill was to lend ammunition to employees who had been wrongfully subjected to firing and other disciplinary action for calling attention to illegal activities or participating in actions which he or she believed violated the law. The legislation should be interpreted liberally to accord the language a meaning consistent with such purpose.
A logical reading of CEPA would therefore be that the "rights and remedies" referred to in the second clause of N.J.S.A. 34:19-8, relate specifically to the rights and remedies available if an employee is wrongfully discharged as a result of his or her disclosure activities. It should not be read, however, to mean all rights and remedies which arise out of the employment relationship between plaintiff and defendant.
In Picogna v. Board of Educ., 249 N.J.Super 332, 592 A.2d 570 (App.Div. 1991), the court found that the Commissioner of Education did not have jurisdiction to hear a wrongful termination claim since it did not arise under the school law. N.J.S.A. 18A:6-9. The plaintiff had filed a parallel suit in the Chancery Division of the Superior Court seeking, in addition to relief under CEPA, a determination that his termination was unlawful under the contract and under the Federal and State Constitutions. The court concluded that whether "... petitioner's employment was wrongfully terminated under the contract and under the CEP Act is for the Court, not the Commissioner, to decide." Id. at 335, 592 A.2d 570. Thus, inferentially, the court concluded that both a claim under CEPA and a separate contract action for wrongful termination could be simultaneously commenced.
In Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240 (D.N.J. 1990), the court refused to dismiss a CEPA claim which was part of a multicount complaint that also alleged, among other things, a violation under Title VII of the Civil Rights Act of 1964. Even though both the CEPA claim and the civil rights claim arose out of the same facts and *413 circumstances, the Sandom Court allowed plaintiff to proceed on both claims as part of the same suit.
Based on the foregoing, an analysis of each count of plaintiff's complaint is necessary. Where the claim is for wrongful termination based on the employee's disclosure of wrongdoing, it would fall under CEPA and be waived. If it concerns collateral issues, which would not be a violation of CEPA even if proven, the claims would remain.
The first count alleges a wrongful discharge in retaliation for disclosure of a conflict of a board member, claiming such action constitutes a violation of public policy. This clearly falls under the scope of CEPA. N.J.S.A. 34:19-5 affords plaintiff all of the remedies he could obtain at common law for public policy violations and his proofs in each case would be identical. The claim must therefore be waived under the terms of N.J.S.A. 34:19-8.
The second count alleges a wrongful discharge in violation of a contractual provision of the employee handbook. This is a separate and distinct action between the employer and employee just as would be a separate claim under Title VII of the Civil Rights Act of 1964. The proofs for each claim would be different. It remains a viable, independent claim.
The third count alleges a breach of the contractual covenant of good faith and fair dealing. This may not be dependent upon facts which would constitute a violation under CEPA. It may require different proofs. It, therefore, may be maintained independently of CEPA.
The fifth and sixth counts both seek compensation for work allegedly done by plaintiff while still employed. It would be illogical to assume that the Legislature intended plaintiff to waive his rights for compensation independent of proving a cause of action under CEPA. Plaintiff should still be entitled to seek compensation for work previously done, irrespective of his success under CEPA. To conclude otherwise would bring *414 about a result clearly not intended by the Legislature. Therefore, counts five and six may be brought independently of CEPA.
The seventh count seeks punitive damages based on allegedly malicious, wanton and willful conduct of defendants. The conduct alleged to be malicious is firing plaintiff for making certain disclosures. This is directly covered by CEPA. The proofs would be the same and CEPA allows punitive damages as a remedy. N.J.S.A. 34:19-5(f). The relief sought under this count independently of CEPA is therefore waived.
The eighth count is a per quod claim filed on behalf of plaintiff's wife. There are no remedies available to plaintiff's wife under CEPA, and she would be barred by the entire controversy doctrine (R. 4:30A) from bringing her own action at a later date. The count is therefore viable independent of CEPA.
The remaining issue is whether the first and seventh counts must be dismissed or should plaintiff instead be permitted to elect to dismiss the CEPA count. And if he may make such an election, should the election be made now or upon the completion of discovery. CEPA states that the institution of an action shall be deemed a waiver. Giving CEPA its plain meaning, the institution of the action is the date plaintiff must waive his other claims. There is no support for the position urged by plaintiff that an election can be made after the completion of discovery. Even though the court rules allow alternative pleadings, R. 4:5-2 and R. 4:5-6, the Legislature specifically directed that plaintiff must make an election at the time the action is instituted. Having chosen to proceed under CEPA when the complaint was filed, the first and seventh counts must be dismissed.
The motion for summary judgment to dismiss the remaining counts is denied.