Charles T. TYSON and Carolyn
L. Tyson, h/w

v.

CIGNA CORPORATION, INA Financial Corp., Insurance Co. of North America, Gerald A. Isom, Richard C. Franklin, J.R. Caron, Mike F. Natan, Steven E. Curd, Bryan H. Nolan, Bobbie D. Adams, Kevin H. Dark, Bernard McAllister, Michael Gallagher, Joseph C. Allegra.

Civil No. 95–3362(JEI).

United States District Court,
D. New Jersey.

Feb. 26, 1996.

Bernadette A. Duncan, Cherry Hill, NJ, for Defendants.

Daniel A. Zehner, Woodstown, NJ, for Plaintiffs.

## OPINION

IRENAS, District Judge:

Defendants move to dismiss plaintiff's claims of racial discrimination under the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* ("NJLAD"), on the grounds that the statute does not permit lawsuits against employees in their individual capacities. We hold that the NJLAD: (1) does not impose liability on non-supervisory employees, and (2) imposes liability on supervisory employees only to the extent that the supervisory employee affirmatively engages in discriminatory conduct while acting in the scope of employment. A supervisory employee's omissions, acquiescence, passivity or other failure to act will not support a claim under the NJLAD. We will therefore grant the defendants' motion to dismiss plaintiff's NJLAD claims against his co-workers. Because there has been no allegation that plaintiff's supervisors affirmatively engaged in acts of discrimination, we will also grant the

defendants' motion to dismiss the NJLAD claims against these defendants.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, an African–American, was an employee in the CIGNA Systems division of the Insurance Company of North America ("INA"). Plaintiff alleges that he was racially harassed on the following occasions. In 1981 and 1982, plaintiff alleges that he was harrased by defendant Gallagher.[1] Complaint ¶ 12A. In September 1987, plaintiff alleges that he was harassed at a company picnic by defendant Allegra. Complaint ¶ 12B. In August 1991, at another company picnic, defendant McAllister allegedly racially harassed plaintiff. On September 8, 1994, plaintiff viewed an allegedly demeaning sketch that was sent by fax from an unknown party in another company office. Complaint ¶ 12D. On September 9, 1994, defendants McAllister, Gallagher and Allegra allegedly racially harassed plaintiff at another company picnic. Complaint ¶ 14.

Defendant Isom is the Chairman and CEO of INA. Defendant Franklin is the President of INA. Defendant Caron is the President of the CIGNA Systems Division of INA. Defendant Natan is the Senior Vice president of the CIGNA Systems Division of INA. Defendant Curd is the Vice President of the CIGNA Systems Division of INA. According to the Complaint at ¶ 10, defendants Nolan, Adams and Dark are "directors and supervisors of defendants CIGNA Corporation, and/or INA, with the responsibility of implementing the policies and programs of said defendant corporations prohibiting the racial or ethnic harassment, discrimination or intimidation of corporate employees." Defendants McAllister, Gallagher and Allegra are Tyson's co-workers. Complaint ¶¶ 7–11.

Plaintiffs' complaint contains one "Count" comprising eight "claims." Plaintiffs' first and second claims assert violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiffs' third and fourth claims assert NJLAD violations.

---

**1.** Although there is no motion currently before us pertaining to the statute of limitations, we note

that some of these violations are quite dated.

Plaintiffs' fifth claim asserts that defendants breached contracts and policies which guarantee plaintiff a workplace free of harassment. Plaintiffs' sixth claim asserts that defendants illegally interfered with "plaintiff's prospective economic advantage." Plaintiffs' seventh claim asserts that certain defendants acted maliciously. Plaintiff's eighth claim is Carolyn Tyson's claim for damages and loss of consortium.[2]

Defendants move to dismiss the Title VII and NJLAD claims as to all defendants other than INA on the grounds that no named defendant other than INA can be held liable under Title VII or the NJLAD because the other defendants are not "employers" or otherwise individually liable. Defendants do not move to dismiss claims five, six, seven or eight, and we do not address these claims.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court will accept the allegations of the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Although the court must assume as true all facts alleged, "[i]t is not … proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated General Contractors of Calif., Inc., v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). Finally, when "[c]onfronted with [a 12(b)(6) ] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Penn-*

*sylvania v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir.1988) (emphasis added).

## III. DISCUSSION

### A. *Title VII & Individual Defendants*

The defendants move for the dismissal of all Title VII claims against the individual defendants on the grounds that Title VII will not support individual liability against employees. This Court has previously held that an employee may be individually liable under the Americans with Disabilities Act, the Age Discrimination in Employment Act, and Title VII as an "employer." *Bishop v. Okidata,* 864 F.Supp. 416 (D.N.J.1994) (Irenas, J.). Our conclusion was based on the statutory definition of an employer as "a person engaged in industry affecting commerce who has fifteen or more employees … and any agent of such person." 42 U.S.C. § 12111(5)(A); *Id.* at 422. We held that individual liability was premised on the "any agent" language of the above statute.

However, the Third Circuit has recently ruled that employees may not be held individually liable under Title VII. *Sheridan v. E.I. DuPont de Nemours and Co, and Jacques Amblard,* Docket No. 94–7509, 1996 WL 36283 (January 31, 1996) (slip op. at 22) Rehearing en banc granted, Judgment vacated, (February 28, 1996) (affirming district court's dismissal of Title VII claims against individual supervisory employee and holding that "an employee cannot be sued"). Plaintiff conceded at oral argument that *Sheridan* dictates the dismissal of the Title VII claims against all individuals. Plaintiff's Title VII claims against the individual defendants will therefore be dismissed.

### B. *NJLAD & Individual Defendants*

The question remaining before the Court is whether plaintiff's NJLAD claims against the individual defendants should also be dismissed.[3] Title VII and the NJLAD are simi-

---

2. Although there is no motion currently before us pertaining to Carolyn Tyson's claim, we note that we have previously held that neither Title VII nor the NJLAD will support a *per quod* claim. *Hurley v. Atlantic City Police Dept.,* Docket Nos. 93–

260 and 94–1122 (D.N.J. August 1995) (slip op. at 35) (Irenas, J.).

3. This determination will involve us in a close analysis of a vague state statute. It is yet another example of the desirability of implementing a

lar in many respects. Indeed, New Jersey courts have often looked to Title VII jurisprudence to resolve questions under the NJLAD. *See Lehmann v. Toys 'R' Us, Inc,* 132 N.J. 587, 624–25, 626 A.2d 445 (1993) (in construing the NJLAD, the New Jersey Supreme Court "frequently" looks to Title VII as "a key source of interpretive authority").

However, the legal foundations for the imposition of individual liability under the two statutes are different. Under Title VII, the basis for imposing individual liability (prior to *Sheridan*) was the "any agent" language discussed above. The Third Circuit did not explain the reasons behind its determination in *Sheridan* to prohibit individual liability under Title VII. But the cases it cites, such as *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995) and *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), have premised their result on a narrow statutory reading of Title VII.

First, these courts have pointed out that the statutory scheme of Title VII limits liability to those employers with fifteen or more employees. This limitation is present in part because "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Miller,* 991 F.2d at 587 (9th Cir.1993) (concluding that the term "agents" in the statute serves only to incorporate respondeat superior liability). This concern is argued to apply with equal or greater force to individual defendants.

Second, Title VII calibrates the maximum allowable damage award to the size of the employer, but makes no provision for individual damage awards. The statute creates a sliding scale of maximum liability, ranging from a cap in damages at $50,000 for employers with fewer than 101 employees to a cap of $300,000 for employers with more than 500 employees. Nowhere are individuals assigned a place in this range. Courts have

concluded that this omission signals Congress's desire to exclude individual liability. *Miller,* 991 F.2d at 587–88, n. 2.

Although these arguments have been held to be dispositive under Title VII, neither of them applies to the very different statutory scheme set forth in the NJLAD. The New Jersey statute must therefore be analyzed separately.

N.J.S.A. 10:5–12 defines those acts which create an "unlawful employment practice" or "unlawful discrimination." In its various subparts the statute forbids specific classes of persons from engaging in specific discriminatory behavior. For example, subpart 12(a) applies to "an employer." Subpart 12(b) applies to a "labor organization." Subpart 12(c) applies to an "employer or employment agency." Subpart 12(d) applies to "any person." Subpart 12(f) applies to "any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation." Subpart 12(g) applies to any "owner, lessee, sublessee, assignee or managing agent" or "other person" or "any agent or employee." Subpart 12(h) applies to "any real estate broker, real estate salesman or employee or agent thereof." Subpart 12(i) applies to "any person, bank, banking organization, mortgage company, insurance company or other financial institution, lender or credit institution." Subpart 12(k) applies to "any real estate broker, real estate salesman or employee or agent thereof or any other individual, corporation, partnership, or organization." Subparts 12(*l*) and 12(m) apply to "any person."

It is clear from the above subparts that the New Jersey legislature knows how to impose individual liability in plain language when it is confident that it wants to do so. Many of the above subparts are very specific in imposing liability on individuals; they use terms such as "any person," "agent," "em-

procedure which would permit New Jersey's federal courts to certify important, unresolved issues of state law to state courts so that New Jersey itself is given the opportunity to resolve the ambiguities of its laws. The Court faced a similar problem in *Tose v. Greate Bay Hotel and Casino,* 819 F.Supp. 1312, 1316, n. 7 (D.N.J. 1993) (Irenas, J.). For an excellent discussion of the desirability of such a certification procedure,

see Section V of Judge Becker's dissent in *Hakimoglu v. Trump Taj Mahal Associates,* 70 F.3d 291, 303 (3d Cir.1995) (dissenting opinion). Although Judge Becker wrote in dissent, the majority joined him as to the certification issue addressed in Section V of the dissent. *Id.* at 293, n. 2 ("enthusiastically endors[ing]" Judge Becker's recommendations therein).

ployee," or "individual." But N.J.S.A. 10:5–12(a), which deals with employment discrimination, imposes liability only on "employers" and not on individual employees.[4] It does not include any of the phrases that so clearly provide a basis for individual liability under other subparts.

The only basis for employee liability is found in N.J.S.A. 10:5–12(e), which provides that it is "an unlawful employment practice, or . . . an unlawful discrimination . . . [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." Subpart 12(e) thus adds to the statute the idea, rooted in criminal law, of accomplice liability.

Subpart 12(e) starts out with "any person" and then adds "whether an employer or an employee or not," which would appear to highlight the legislature's determination that individual employees may be liable. This clause must be read in conjunction with subpart 12(a) dealing with discrimination by employers, which it supplements. When read in conjunction with subpart 12(a), subpart 12(e) forbids any person to "aid or abet" an "employer's" discriminatory conduct.

A New Jersey intermediate appellate court has defined "aid" as meaning to assist, support or supplement the efforts of another and "abet" as meaning to encourage, counsel, incite or instigate the commission of unlawful conduct. *Baliko v. Stecker,* 275 N.J.Super 182, 645 A.2d 1218 (App.Div.1994).[5] Because *Baliko* analogizes explicitly to the criminal context, we believe a comparable finding of intent is required in order to find accomplice liability. Thus, in order to aid or abet anoth-

er to commit an unlawful act, it is necessary that the defendant wilfully and knowingly associate himself in some way with the unlawful act, and that he wilfully and knowingly seek by some act to help make the unlawful act succeed. "The aider and abettor must share the same intent as the one who actually committed the offense. There must be a community of purpose between the actual perpetrator and the aider and abettor." *State v. Newell,* 152 N.J.Super. 460, 469, 378 A.2d 47 (App.Div.1977) (the case cited in *Baliko* ) (internal citations omitted).

■ Because N.J.S.A. 10:5–12(e) serves only to create accomplice liability, it is necessary to explore the elements of principal liability in order to determine how an individual employee might aid and abet his employer in the unlawful conduct proscribed by subpart 12(a). The legal basis for an employer's liability for sexual harassment or hostile work environment created by its non-supervisory employees [6] is not based on notions of respondeat superior. An employer is liable for the conduct of nonsupervisory employees only as a by-product of its reaction to their conduct, not as a direct result of the conduct itself. An employer is liable if it knows or reasonably should have known of the misconduct of non-supervisory employees and fails to take prompt and adequate remedial action. *See, e.g., T.L. v. Toys 'R' Us,* 255 N.J.Super. 616, 644, 605 A.2d 1125 (1992) (concurring opinion); *Foster v. Township of Hillside,* 780 F.Supp. 1026, 1039 (D.N.J. 1992); *Reynolds v. Atlantic City Convention Center Authority,* 1990 WL 267417, *15 (D.N.J.1990).

■ A non-supervisory employee who engages in discriminatory conduct does not aid

---

**4.** While the definition of "employer" found in N.J.S.A. 10:5–5(e) establishes that an "employer" may include an individual, partnership, corporation, or a number of other legal entities, nothing in the definition suggests that it may be construed to include an employee.

**5.** It is clearly established that, where the New Jersey Supreme Court has not specifically addressed an issue, a court sitting in diversity jurisdiction must give serious consideration to the state's intermediate appellate courts in interpreting state law. *See Robinson v. Jiffy Executive Limousine Co.,* 4 F.3d 237, 242 (3d Cir.1993)

("[i]n the absence of a clear pronouncement from the state's highest court, a federal court may consider the decisions of the state's intermediate appellate courts") (internal citations omitted).

**6.** Employer liability for the conduct of non-supervisory employees arises only in the context of sexual harassment and hostile work environment discrimination. The other forms of discrimination—in hiring, firing, compensation, and terms, conditions or privileges of employment—are caused by the conduct of supervisory employees.

or abet the employer's failure to take corrective action. A non-supervisory employee has no role whatever in his employer's reaction to his discriminatory conduct. A non-supervisory employee who engages in discriminatory conduct shares no intent or common purpose with his employer who fails to respond to the discriminatory conduct. One might argue, of course, that both share the "intent" to create a discriminatory atmosphere. We believe, however, that the employer's reaction is sufficiently divorced from the employee's conduct that there is no community of purpose between them. A non-supervisory employee who engages in discriminatory conduct cannot be said to "intend" that his employer fail to respond.

The few courts that have addressed this issue have generally agreed with our conclusion that non-supervisory employees are not liable. These courts have held that, in order to establish individual liability, "an employee must have 'sufficient authority' over plaintiff." *Braddy v. Jersey Shore Medical Center,* 44 FEP 149, 151, 1987 WL 13002 (D.N.J. 1987); *Roberts v. Keansburg Bd. of Educ.,* 5 N.J.A.R. 208, 249 (1983). We reached the same conclusion in *Hurley v. Atlantic City Police Dept.,* Docket Nos. 93–260 and 94–1122 (D.N.J. August, 1995) (slip op. at 26) (Irenas, J.).

■ An employer's liability for a supervisory employee's discriminatory conduct arises in a manner different from that for a non-supervisory employee's discriminatory conduct. Under *Lehmann,* an employer is liable for a supervisory employee's discriminatory conduct through the application of the principles set forth in the Second Restatement of Agency. *Lehmann,* 132 N.J. at 615. A supervisor's acts within the scope of his employment become the acts of the employer under notions of respondeat superior. Therefore, a supervisor who engages in dis-

criminatory conduct while acting within the scope of his employment shares the intent and purpose of the employer (the principal) and may be held individually liable (as an accomplice) for aiding and abetting the employer's unlawful conduct.[7]

■ By contrast, a supervisor who acts outside the scope of his employment is *ipso facto* not aiding and abetting his employer. Therefore, he may not be held individually liable as an accomplice. *Lehmann* goes to some length to establish the elements of employer liability when a supervisory employee engages in discriminatory conduct while acting outside the scope of employment. While we will not restate the details here, employer liability arises under these circumstances in essentially the same manner as for the conduct of non-supervisory employees. It arises as a result of the employer's reaction to the supervisor's discriminatory conduct outside the scope of employment, not as a direct result of the discriminatory conduct itself. Therefore, supervisory employees acting outside the scope of their employment may not be individually liable for the reasons set forth previously with respect to non-supervisory employees.

■ In addition, we hold that it is necessary that a supervisor affirmatively engage in discriminatory conduct in order to find individual liability. Mere inaction, passivity, or acquiescence do not in our view rise to the level of aiding and abetting. They do not have the elements of willfulness, intent, or commonality of goals—of active purpose—that "aid or abet" requires. The principal wrong itself (of the employer) is mere inaction. To say that a supervisor who fails to act shares a common purpose with an employer who fails to act is too great a stretch, for inaction may be motivated by countless factors.[8]

7. *Lehmann* itself provides tacit support for the imposition of individual liability upon supervisory employees. Although the *Lehmann* court did not address the issue squarely, the suit involved a claim against plaintiff's former supervisor, Don Baylous, for his conduct while acting in the scope of employment. The court did not at any point comment negatively upon the imposition of individual liability.

8. Because the issue has not been placed before us by the facts of this case, we decline to define precisely what behavior will rise to the level of affirmative engagement in discriminatory conduct. A supervisory employee's conduct must be viewed in light of the New Jersey judiciary's analysis of aiding and abetting; generally speaking, the conduct must clearly evince the supervi-

There is little remedial advantage to holding a supervisory employee liable for his inaction. The employer is already liable for its own inaction as well as the inaction of its supervisory employees. If a supervisor knows of discrimination and fails to act, the employer is liable. On the other hand, holding supervisory employees liable for failing to act places a tremendous burden on supervisory employees who must defend against claims that they did nothing. It also forces the judiciary to assume the daunting task of determining the subjective intent behind a supervisory employee's non-action.

Other courts that have addressed this issue have held that, as a matter of policy, individual employees should be held liable only for affirmative acts. *Hendrix v. Fleming Companies,* 650 F.Supp. 301 (W.D.Ok. 1986); *Ponton v. Newport News School Board,* 632 F.Supp. 1056, 1068 (E.D.Va. 1986).[9]

Whether a supervisor was acting within the scope of his employment must be determined in light of the principles set forth at length in *Lehmann* and the Restatement (Second) of Agency, §§ 228–237 (1957). The primary purpose of N.J.S.A. 10:5–12(a) is to prevent discrimination in the workplace. A supervisor acting in the scope of his employment, in the workplace, cloaked in the mantle of his authority—these are the circumstances that concerned the legislature and led it to add the words "whether an employer or an employee or not" to subpart 12(e). It is discriminatory conduct under these circumstances which the legislature intended to regulate. The acts of a supervisor outside the scope of employment are almost by definition not the concern, for the purposes of individual liability, of a statute aimed at employment discrimination.[10]

The purpose of the NJLAD is to prevent employment discrimination. More specifically, it prohibits discrimination in (1) hiring, (2)

firing, (3) compensation, and (4) the "terms, conditions or privileges of employment." N.J.S.A. 10:5–12(a). Only employers and supervisory employees acting within the scope of their employment have the power to hire, fire, set compensation, or alter the terms, conditions or privileges of employment. The goals of the NJLAD are therefore served by permitting suits against employers and against supervisory employees who affirmatively engage in impermissible conduct while acting in the scope of employment. Permitting suits against individual employees under other circumstances does little to advance the purposes of the statute and imposes an unacceptably large burden on the individual employees and the courts.

■ There is no allegation that defendants Isom, Franklin, Caron, Natan, Curd, Nolan, Adams or Dark committed affirmative discriminatory acts. These defendants have been named only because they "knew or should have known, of the aforesaid incidents of racial harassment and intimidation directed at plaintiff Tyson and, notwithstanding said knowledge or duty to know, negligently, recklessly, and/or through willful indifference, failed to take appropriate prompt and appropriate preventive or corrective action." Complaint ¶ 13. There is no allegation that these defendants personally committed affirmative discriminatory acts. The motion to dismiss the NJLAD claims against them will therefore be granted. Defendants McAllister, Gallagher and Allegra are Tyson's co-workers. The NJLAD claims against these defendants will therefore also be dismissed.

### C. The Corporate Employer

Defendant has also moved for the dismissal of all corporate defendants other than INA. Plaintiff filed suit against CIGNA Corporation, INA Financial Corporation, and INA. Plaintiff concedes that INA was his employer (Pl.Opp.Brief at 3, n. 2), but argues

---

sor's subjective intent to engage in discriminatory conduct.

**9.** We recognize that there is some ambiguity in the criminal law as to whether a failure to intervene can give rise to accomplice liability. *See e.g.,* Wayne R. LaFave, *Substantive Criminal Law,*

§ 6.7 *et seq.* (p. 140) (West 1986). We nonetheless believe that individual liability for inaction is unwarranted in this context.

**10.** As noted previously, however, an employer may be liable as a result of its reaction to a supervisory employee's misconduct outside the scope of employment. *See supra,* p. 841.

in his opposition brief that the other two corporate defendants should be included "under basic principles of corporate liability" and because INA "holds itself out to the public as CIGNA." Defendant concedes that INA is plaintiff's employer and does not move to dismiss plaintiffs' claims against INA.

CIGNA is neither a legal entity nor an employer. It is a trade name. At oral argument, plaintiff conceded that the Insurance Company of North America is plaintiff's employer and the only proper corporate defendant in this action. We will therefore enter an appropriate order as to this issue.

## IV. CONCLUSION

The corporate defendants other than INA will be dismissed. The Title VII and NJLAD claims against the individual defendants will also be dismissed. The defendants have not moved to dismiss plaintiff's other claims against the individual defendants, and we make no holding with respect to such claims. An appropriate order will enter.