**Rodney JONES and Leslie Jones,
his wife, Plaintiffs.**

**v.**

**JERSEY CITY MEDICAL CENTER,
Mary Beth Ray–Simone, et al.,
Defendants.**

Civil Action No. 98–2039 (WHW).

United States District Court,
D. New Jersey.

Sept. 18, 1998.

Gerard J. Gilligan, P.C., Cedar Grove, NJ, for Plaintiffs.

Jed L. Marcus, Grotta, Glassman & Hoffman, P.A., Roseland, NJ, for Defendants.

## OPINION

WALLS, District Judge.

This matter arises from the complaint of alleged discriminatory acts against Rodney Jones ("Jones") by Jersey City Medical Center ("JCMC") and Mary Beth Ray–Simone ("Ray–Simone"). The defendants move to dismiss Counts One and Three as to individual defendant Ray–Simone. They also move to dismiss Counts Two and Four as to all defendants. Under Fed.R.Civ.P. 78, the Court decides this motion without oral argument by counsel. For the following reasons, the defendant's motion is granted.

### Factual and Procedural Background

For the purposes of this motion to dismiss, the Court accepts as true all allegations in the Complaint.

On and before January 29, 1996, plaintiff Jones was employed as a supervisor of emergency medical technicians at JCMC. Compl. ¶ 1. At the aforementioned time, defendant Ray–Simone was the Director of Emergency Medical Services at JCMC. Compl. ¶ 2. On or about November 9, 1989, there were inci-

dents of racial discrimination, including cross burning, within the Department of Emergency Medical Services at JCMC. According to the complaint, these incidents were not properly investigated, addressed, managed or resolved by the management of JCMC. Compl. ¶ 3. This inaction allegedly allowed racial discrimination to continue, thereby causing great injury and detriment to the plaintiffs. Compl. ¶ 3. The plaintiff further contends that the defendants and other fictitiously identified defendants all participated in racially discriminatory acts and/or were agents, employees or independent business entities of JCMC who failed to investigate, manage or take steps to resolve overt and covert racially discriminatory conduct in the workplace. Compl. ¶ 4. Plaintiff Jones was discharged from employment with JCMC on January 29, 1996. Compl. ¶ 6. His complaint contends that his discharge was caused by the illegal and discriminatory conduct of the defendants, causing him great injury, detriment, financial loss and emotional distress. Compl. ¶ 6.

On January 29, 1998, the plaintiff filed a four-count complaint against JCMC and Ray–Simone in the Superior Court of New Jersey. The complaint alleges that, among other things, the defendants' discrimination against him on account of his race violated both Title VII of the Civil Rights Act of 1964 ("Title VII") (Count Three) and the New Jersey Law Against Discrimination. N.J.S.A. 10:5–1 et seq. ("NJLAD") (Count One). The complaint further alleges that he was discharged in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count Two). Plaintiff Jones' spouse, Leslie Jones, alleges a loss of consortium due to the defendants' allegedly improper actions (Count Four). On April 30, 1998, the defendants removed the matter to this Court.

### Legal Standard

On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the nonmoving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384

(3d Cir.1994). The question is whether the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1429–30 (3d Cir.1997) (quoting *Glassman v. Computervision Corp.,* 90 F.3d 617, 628 (1st Cir.1996)); *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Analysis

■ In support of this motion to dismiss, the defendants make the following arguments: (1) the claim asserting individual liability against Ray–Simone for violation of Title VII should be dismissed because an individual cannot be held liable under Title VII; (2) the plaintiffs' CEPA claim is barred by the applicable one-year statute of limitation; (3) the plaintiff's spouse's loss of consortium claim must be dismissed with prejudice because *per quod* damages are not available in employment cases; and (4) the claim asserting individual liability against Ray–Simone for violation of NJLAD should be dismissed with prejudice because, under the circumstances, Ray–Simone cannot be held individually liable under the NJLAD.

As a preliminary matter, the Court notes that the plaintiff, in his reply brief in opposition to the motion to dismiss, has conceded that under Title VII, the Third Circuit's decision in *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542 (3d Cir.1996), precludes the plaintiff's naming Ray–Simone as an individual defendant. For this reason, the court dismisses the individual Title VII claim against Ray–Simone.

1. *Whether the plaintiff's CEPA claim is barred by the applicable one-year Statute of Limitations*

■ The CEPA statute provides that "upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction ..." *N.J.S.A.* 34:19–5. For statute of limitations purposes, an employee's cause of action under CEPA accrues on the date of the discharge, and such action must be filed within one year of the discharge date. *See Keelan v. Bell Communications Research,* 289 N.J.Super. 531, 674 A.2d 603 (App.Div. 1996). *Keelan* involved an attempt by a defendant to shorten the statute of limitations by asserting an accrual date which was earlier than the actual date of discharge. *See id.* The court found that commencing the statute of limitations at such an earlier date would contravene the concept that CEPA is remedial legislation that should be liberally construed. *See id.* 289 N.J.Super. at 540, 674 A.2d 603. However, there is no indication that the *Keelan* court intended to construe CEPA so liberally as to commence the statute of limitations at a date later than that required by the statute itself.

As stated above, the plaintiff was discharged on January 29, 1996. He commenced his CEPA cause of action two years later, on January 29, 1998. The plaintiff argues that although the statute of limitations for a CEPA action is one year, the accrual of his action should be tempered by the discovery rules in accordance with *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973). The "discovery rule" is an equitable doctrine under which a cause of action will not accrue until the injured party discovers, or by reasonable diligence and intelligence should have discovered, that he has a basis for an actionable claim. *See id.* 62 N.J. at 272, 300 A.2d 563. The plaintiff states that the discovery rule should be followed in this case because there may be a situation where an employee is discharged in violation of CEPA without becoming aware of the defendant's retaliatory

conduct until well after the dismissal occurs. However, the plaintiff does not allege in his complaint or in his brief that he did not become aware of the defendant's allegedly retaliatory conduct until after his dismissal.

This is a situation where the plaintiff has not only failed to prove that the desired equitable remedy applies to this type of case, but has also failed to show that it is available in his particular situation. Fairness to the defendant is one of the principal considerations underlying the enactment of statutes of limitations. *See Lopez,* 62 N.J. at 274, 300 A.2d 563. To impose equity as a bar to the statute of limitations here would strain the boundaries of equity as well as impose hardship on the defendants. Therefore, the court dismisses the plaintiff's CEPA claim as barred by the one-year statute of limitations.

2. *Whether Per Quod Damages are available in Employment Discrimination Cases*

■ The plaintiff's spouse, Ms. Leslie Jones, claims that, as a result of the defendants' conduct, she suffered injury and was deprived of the society, services and consortium of her husband. Compl. ¶ 3. However, in the context of a NJLAD action, there is no permitted *per quod* action for loss of consortium. *See Hurley v. Atlantic City Police Dept.,* 1995 WL854478 (D.N.J. Aug. 4, 1995) (stating that neither NJLAD nor Title VII support a *per quod* action); *Catalane v. Gilian Instrument Corp.,* 271 N.J.Super. 476, 638 A.2d 1341 (App.Div.1994). The *Catalane* court concluded in its reading of the NJLAD, that the legislature did not intend to establish a cause of action for any person other than the individual discriminated against. *See id.* 271 N.J.Super. at 500, 638 A.2d 1341.

■ Several other courts have held that *per quod* damages are not available under Title VII. *See Brown v. Youth Services Intern. of Baltimore, Inc.,* 904 F.Supp. 469 (D.Md.1995); *Dunham v. City of O'Fallon, Mo.,* 945 F.Supp. 1256 (E.D.Mo.1996); *Miller v. CBC Companies, Inc.,* 908 F.Supp. 1054 (D.N.H.1995); *Doe v. R.R. Donnelley & Sons Co.,* 843 F.Supp. 1278 (S.D.Ind.1994), *aff'd,* 42 F.3d 439 (7th Cir.1994).

The CEPA statute was enacted to protect employees who "blow the whistle" on organizations engaging in illegal or harmful activity from retaliatory action. *See Young v. Schering Corp.,* 141 N.J. 16, 23, 660 A.2d 1153 (1995) "Under CEPA, an employer may not take retaliatory action against an employee because the employee "discloses or threatens to disclose an activity, policy or practice of the employer that the employee reasonably believes is a violation of a law, or a rule or regulation promulgated pursuant to law." " *See N.J.S.A.* 34:19–3. The *Catalane* court held that *per quod* damages are also not available under such a "whistle blower" statute. 271 N.J.Super. at 500, 638 A.2d 1341 (quoting *Flaherty v. Enclave,* 255 N.J.Super. 407, 414, 605 A.2d 301 (Law Div.1992)).

The plaintiff contends that although the defendant cites cases in support of the assertion that *per quod* damages are not allowed in this situation, none of the cases cited is controlling because each is either from other jurisdictions or lower New Jersey courts. However, in the absence of a clear pronouncement from the state's highest court, a federal court may consider the decisions of the state's intermediate courts. *See Burke v. Maassen,* 904 F.2d 178, 182 (3d Cir.1990) (citing *Erie Castings Co. v. Grinding Supply, Inc.,* 736 F.2d 99, 100 (3d Cir.1984)). In any event, while the cases cited by the defendant are not controlling, they are persuasive. The plaintiff gives no compelling reason to disregard the reasoning and decisions of these other courts. Ms. Jones' *per quod* claims cannot be sustained under either the NJLAD, Title VII or CEPA. Therefore, her claims are dismissed with prejudice.

3. *Whether Ray–Simone can be held Individually Liable under the New Jersey Law Against Discrimination*

The NJLAD provides in relevant part:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination ... for an employer, because of the ... race ... of any individual ... to discriminate against such individual in compensation or items, conditions, or privileges of employment ...

*N.J.S.A.* 10:5–12(a). Employee liability for such acts is found in *N.J.S.A.* 10:5–12(e), which makes it an "unlawful discrimination practice ... for any person, whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

While some courts have, in a civil context, analogized "aiding and abetting" to their criminal law definitions and construed it to mean "to encourage, counsel, incite or instigate in the commission of [an unlawful act]," *See, e.g., Baliko v. Stecker,* 275 N.J.Super. 182, 192, 645 A.2d 1218 (App.Div.1994), the New Jersey Supreme Court rejected this analogy, noting that the NJLAD is a remedial, rather than a criminal statute. *See Passaic Daily News v. Blair,* 63 N.J. 474, 488, 308 A.2d 649 (1973).[1] Under either standard, in order for a person to be individually liable under NJLAD, he must actually intend to facilitate discrimination. *See U.S. v. Local 560, I.B.T.,* 754 F.Supp. 395 (D.N.J.1991), *vacated, remanded,* 948 F.2d 1338 (2d Cir. 1991); *State v. Kamienski,* 254 N.J.Super. 75, 603 A.2d 78 (App.Div.1992), *cert. denied,* 130 N.J. 18, 611 A.2d 656 (1992). The aider and abettor must share a community of [discriminatory] purpose with the actual perpetrator. *See State v. Madden,* 61 N.J. 377, 396–97, 294 A.2d 609 (1972).

In addition, the aider and abettor must be actively involved in the discriminatory conduct. *See Tyson v. CIGNA,* 918 F.Supp. 836, 841 (D.N.J.1996). Under *Tyson,* an individual employee will only be liable if he is a supervisor and engages in affirmative acts of discrimination. *See id.; See also Caldwell v. KFC, Inc,* 958 F.Supp. 962, 971 (D.N.J.1997); *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396 (D.N.J.1996). The allegedly discriminatory action must also be within the scope of the individual's employment. *See Andersen v. Exxon Co.,* 89 N.J. 483, 502, 446 A.2d 486 (1982); *Schmidt v. Smith,* 294 N.J.Super. 569, 578, 684 A.2d 66 (App.Div. 1996).

Plaintiff Jones alleges that Ray–Simone "tolerated" overtly racist actions in the workplace, and that because these actions created a hostile and discriminatory workplace, she can be held individually liable under NJLAD. The *Tyson* case speaks directly to this point. In *Tyson,* the plaintiff sued his employer and several supervisory employees for racial harassment under Title VII and NJLAD. *See Tyson,* 918 F.Supp. 836 (D.N.J.1996). The plaintiff charged only that the supervisory employees knew or should have known about the incidents of racial harassment and that they failed to take appropriate and prompt preventive or coercive action. *See id.* 918 F.Supp. at 842. The district court granted the defendant's motion to dismiss with prejudice for all of the defendants under both Title VII and NJLAD, observing that supervisory employees may not be liable under the law simply because of mere inaction, passivity or acquiescence. *See id.* 918 F.Supp. at 840–43. The Court found that although a defendant's supervisory status may satisfy the required element of shared intent, affirmative conduct done within the scope of employment is also necessary to state a claim of individual liability under NJLAD. *See id.*

Jones also contends that the Court must make a finding of fact that Ray–Simone did not have a discriminatory intent in order to accept her argument that Ray–Simone does not have individual liability under NJLAD and that, as a finding of fact, this question must go before a jury. While this might be true under a *Tyson* intent analysis, a recent appellate case has reviewed the *Tyson* standard. In *Failla v. City of Passaic, et al.,* 146 F.3d 149 (3d Cir.1998), the Circuit court decided that the issue of shared intent is irrelevant under NJLAD. The *Failla* court relied on the Restatement (Second) of Torts to refine the standard of civil aiding and abetting. *See id.* 146 F.3d at 158. Under the Restatement, an individual is liable for civil aiding and abetting when he "knows that the

---

1. The Third Circuit has explained this apparent contradiction between *Baliko* and *Passaic Daily News* by explaining that *Passaic Daily News* referred specifically to the intent requirement of criminal accomplice liability while *Baliko* fo- cused on the meaning of "aid and abet" as it relates to the assistance or encouragement that the aider or abetter provides. *See Failla v. City of Passaic, et al.,* 146 F.3d 149, 157 fn. 8 (3rd Cir.1998).

[principal's] conduct constitutes a breach of duty and gives substantial assistance or encouragement to the [principal's] ... conduct ... " Restatement Second of Torts § 876(b). Therefore, the scienter requirement of *Tyson*, which might merely require some role, knowledge or involvement in the principal's conduct, has been raised to require that the individual knows of the principal's discriminatory conduct, knows that such conduct involves a breach of the principal's duty to the plaintiff and actually assists or encourages the unlawful act. *See generally Failla* at 158–59. The Circuit Court determined that in such circumstances it is important that the standard be more than mere knowledge or implementation. *See id.* 146 F.3d at 159.

■ The plaintiff also asserts that by discharging him from employment, Ray–Simone performed the discriminatory conduct that caused his harm. However, this claim is not borne out by the plaintiff's compliant or his brief. The alleged discriminatory acts against the plaintiff occurred in November, 1989. Compl. ¶ 3. The plaintiff was discharged by Ray–Simone on January 29, 1996. Compl. ¶ 2. While these two actions may have been related, the plaintiff does not show, or more importantly, does not even allege, that there is a viable link between the two actions. He merely states that he was discharged at some point after the alleged discriminatory acts and that Ray–Simone was the person who discharged him. The plaintiff does not allege that Ray–Simone directly participated in any of the discriminatory acts of November 1989 or that there is some other nexus between the events of November 1989 and January 1996. He does not even allege that there was any discriminatory conduct connected with the termination. The plaintiff merely declares that the discriminatory conduct in November 1989 led to and caused his discharge in January 1996, without giving any indication how the one action led to or caused the other. Compl. ¶ 6. There is also no allegation by the plaintiff that Ray–Simone even knew of the alleged discriminatory conduct of November 1989. A statement that Ray–Simone discharged the plaintiff accompanied by nothing more than an allegation of discrimination seven years earlier does not satisfy the *Failla* standard. There-

fore, the court dismisses the plaintiff's claim of individual liability against Ray–Simone without prejudice.

### Conclusion

For the foregoing reasons, the Court grants the defendant's motion to dismiss.

**SO ORDERED.**

### ORDER

This matter comes before the Court upon the motion of Defendants Jersey City Medical Center ("JCMC") and Mary Beth Ray–Simone ("Ray–Simone") to dismiss Counts One and Three of the Complaint as to individual defendant Ray–Simone. They also move to dismiss Counts Two and Four of the Complaint as to all defendants. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion,

The Court **grants** the defendant's motion.

**SO ORDERED.**