Nikki CHATMAN, Plaintiff,

v.

GENTLE DENTAL CENTER OF WAL-THAM, Gentle Dental Center of Cambridge, Gentle Communications, Inc., Leendert Van de Rydt, Barry Bornfriend, and Carl Toltz, Defendants.

Civil Action No. 95–12710–RCL.

United States District Court,
D. Massachusetts.

Aug. 22, 1997.

Pamela S. Freeman, Freeman & Freeman, Brookline, MA, for Plaintiff.

Burton A. Nadler, Petrucelly & Nadler, Boston, MA, Wilfred J. Benoit, Jr., Goodwin, Proctor & Hoar, Boston, MA, for Defendants.

*OPINION AND ORDER*

LINDSAY, District Judge.

## I. INTRODUCTION

In this action, the plaintiff Nikki Chatman ("Chatman") alleges that the defendants—who, she asserts, are one or more of the following: her employers, her supervisors and her co-workers—subjected her to sex discrimination (in the form of sexual harassment), race discrimination, retaliation and other wrongful conduct in connection with her employment and the ultimate termination of that employment. The alleged misconduct of the defendants, Chatman claims, constitutes race discrimination and sexual harassment made unlawful by Mass. Gen. L.

c. 151B ("Chapter 151B")[1]; unlawful employment retaliation proscribed by Chapter 151B and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3 ("Title VII"); assault; battery; intentional infliction of emotional distress; and defamation.[2] The defendants have moved, on various grounds discussed later in this opinion, to dismiss these claims.

## II. FACTUAL ALLEGATIONS [3]

Chatman, an African–American woman, began her employment with Gentle Communications, Inc., Gentle Dental Center of Cambridge, and the Gentle Dental Center of Waltham (collectively, "Gentle Communications" ) in November, 1991.[4] Initially, she worked as a receptionist for Gentle Communications under the direct supervision of Dr. Leendert Van de Rydt ("Van de Rydt"), alleged to be a dentist and "directing partner" of Gentle Communications. In February, 1992, Chatman was promoted to an administrative position with Gentle Communications, and Barry Bornfriend ("Bornfriend") became her supervisor. She alleges that, at all relevant times, Bornfriend was "director" of Gentle Communications and a partner in and the administrator of the two Gentle Dental centers.[5]

The complaint alleges that, throughout the course of her employment with Gentle Communications, her supervisors, Van de Rydt and Bornfriend, and Gentle Communications' bookkeeper, Carl Toltz ("Toltz") (collectively "the individual defendants"), subjected Chatman to sexual harassment and discrimination based on sex and race. The individual defendants and other dentists at Gentle Communications are alleged frequently, in the presence of Chatman, to have discussed other female employees of Gentle Communications, commenting on their attire, the sizes of their breasts and their sex lives. The complaint alleges that crude sexual language and innuendos were pervasive in the office. Chatman, who in her administrative position, had responsibility for hiring new employees, was told on more than one occasion, by one or more of the individual defendants to hire women with large breasts and nice figures who would be willing "to put out." The complaint alleges that Van de Rydt and Bornfriend also made unwelcome sexual advances to Chatman, made frequent comments on her sex life and engaged in unwanted physical contact with her.

Van de Rydt is alleged to have engaged in the following conduct, among other things. He often commented on various of Chatman's physical features, including what he described as the fullness of her lips. On some Mondays he would ask Chatman if she had had sex over the weekend. Moreover, Chatman alleges Van de Rydt frequently touched her without her consent. This unwanted physical contact included rubbing or leaning against her body, touching her cheeks or knees, and rubbing her shoulders. On one occasion, while a number of Gentle Communications staff members were together at a bar, Van de Rydt threw salt on the plaintiff's hands and licked it off, drinking a shot of tequila with it. On another occasion, Van de

1. To the extent that they survive the present motion, Chatman's allegations of sexual harassment state claims of both *quid pro quo* and hostile environment sexual harassment in violation of Chapter 151B.

2. Chatman originally filed an eleven-count complaint in a Massachusetts state court (the "complaint"). After the defendants removed the case to this court, pursuant to 28 U.S.C. § 1441 and § 1446 and filed a motion to dismiss all of the counts, Chatman voluntarily dismissed five of the original counts. Thus the claims above are those that remain before this court.

3. The following facts are summarized from the complaint, and they are taken as true for purposes of the present motion. *Kiely v. Raytheon Company*, 105 F.3d 734, 735 (1st Cir.1997).

4. Chatman alleges that she worked for all three of these entities during the period relevant to the complaint. Moreover, she alleges that the three are so closely related and so intermingled in their operations that they constitute a single employer for purposes of Chapter 151B and Title VII. Complaint ¶¶ 11, 16.

As a side matter, the complaint alleges that the Gentle Dental centers are "Massachusetts businesses," without indicating whether they are general business corporations, professional corporations, partnerships or other entities. Complaint ¶¶ 5, 6. Gentle Communications is alleged to be a "Massachusetts corporation." Complaint ¶ 7.

5. Bornfriend is also alleged to have held equity interests in the two Gentle Dental centers.

Rydt offered to pay Chatman twenty dollars to lick an ice cream cone in front of him. Van de Rydt repeatedly asked Chatman to date him. He persisted in calling her at home, despite her objections. Van de Rydt finally threatened that if Chatman continued to refuse his advances she would lose her job.

The complaint alleges that Bornfriend displayed similar offensive conduct. At work, Bornfriend would chase the plaintiff around her desk, pinch her and try to grab her, all without her consent. He would also punch her in the arm and say: "Let's fight, I want to roll around on the ground with you." He once tore open Chatman's blazer to see what she wore underneath. On another occasion, Bornfriend and other men in the office generated a computer image of Chatman's face and taped it onto a *Playboy* magazine centerfold. The men then called Chatman into a conference room and suggested that she had posed for the centerfold while asleep · or drunk the night before.

Another occasion involves both Bornfriend and Toltz. On that occasion, Chatman alleges that Toltz said to Bornfriend, in Chatman's presence, "Why don't we throw Nikki on the desk and screw her?" Bornfriend replied that Chatman would "get down on her knees and service him"—a comment the plaintiff took to mean that she would fellate him.

The complaint alleges that Van de Rydt, Bornfriend and other dentists at Gentle Communications made racial slurs and racist comments in Chatman's presence, specifically, comments to the effect that black men were drug dealers, carried guns, or were possessed of large penises.

The complaint alleges that the conduct and comments of the individual defendants and other dentists at Gentle Communications created a hostile work environment and interfered with Chatman's performance of her job. The complaint alleges that Chatman suffered emotional distress and developed physical illness from the stress she faced at work. In November, 1993, she sought medi-

cal treatment for her symptoms, which included fatigue, insomnia, nervousness, eating problems and depression. Chatman's physician advised her that her physical illness stemmed from the sexual harassment she. faced at work, and that she should see a psychotherapist. On November 23, 1993, her physician sent a letter to Gentle Communications, advising that Chatman was suffering from the environmental stresses at work.

Chatman alleges that she complained several times to the management of Gentle Communications about the conduct of the individual defendants and other dentists at Gentle Communications, but that management never investigated any such complaints. Nor was Chatman notified of any corrective measures taken by Gentle Communications. The complaint alleges that Gentle Communications did not have an adequate policy regarding sexual harassment during the period of Chatman's employment, and that Chatman never received any information concerning Gentle Communication's policy regarding sexual harassment.

In November, 1993, Chatman contacted an attorney regarding her potential claims of discrimination and sexual harassment against Gentle Communications. The attorney began to investigate her claims by calling various employees and friends of Chatman. Two weeks later, on December 1, 1993, Gentle Communications terminated her position, saying that she was an unsuitable employee.

### III. THE MCAD CHARGE

■ In December, 1993, Chatman filed a charge of discrimination (the "MCAD Charge") with the Massachusetts Commission Against Discrimination ("MCAD"). On the first page of the MCAD Charge, Chatman named Gentle Communications and the Gentle Dental centers as the employer entity that discriminated against her and further specified that she "was sexually harassed by the supervisors/partners of Gentle Communications/Gentle Dental Centers (hereinafter, 'Gentle Communications')." [6] In later parts

6. On a motion to dismiss for failure to state a claim, the court is ordinarily precluded under Fed.R.Civ.P. 12(b)(6) from considering documents beyond the four corners of the complaint, unless the motion is converted to a motion for summary judgment under Fed.R.Civ.P. 56.

of the MCAD Charge, she set forth in detail the conduct that she claimed violated Chapter 151B. In so doing, she made allegations about the conduct of Van de Rydt, Bornfriend and Toltz that are similar to the allegations she makes in the complaint now before the court.

Chatman later dismissed the MCAD Charge and filed a civil action in state court pursuant to Mass. Gen. L. c. 151B § 9.[7] That action was removed to this court by the defendants, with jurisdiction founded on the claimed violation of Title VII.

## IV. PROCEDURAL POSTURE OF THE ACTION

The defendants have moved to dismiss the claims remaining in this case—those identified in the introductory section of this opinion—pursuant to Fed.R.Civ.P. 12(b)(6). At a hearing on the motion, the court issued, from the bench, rulings on certain of the issues raised by the present motion. Thus, the court granted the motion of the defendants Van de Rydt and Toltz to dismiss the defamation claim against them; denied the motion of the defendant Bornfriend to dismiss the defamation claim against him; denied the motion of the defendant Toltz to dismiss the assault claim against him; and denied the motion of the defendant Gentle Dental Center of Waltham to dismiss.

At the conclusion of the hearing, the court reserved rulings on the following issues, which will be addressed in this opinion: (1) whether count I and count IV should be dismissed because the individual defendants were not named as respondents in the MCAD Charge; (2) whether the individual defendants as supervisors or co-employees of Chatman, can be held liable individually for sexual harassment and discrimination under Title VII; and (3) whether the state-law, intentional tort claims (assault, battery and intentional infliction of emotional distress), arising out of the alleged incidents of sexual harassment, are barred by either the exclusivity provision of Massachusetts' Workers' Compensation Act, Mass. Gen. L. c. 152 § 24, or by the exclusivity provision of Chapter 151B, Mass. Gen. L. c. 151B § 9. *See Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 631 N.E.2d 555, 556–559 (1994).

## V. DISCUSSION

### A. The Standard of Review

On a motion to dismiss for failure to state a claim, the court is required to take the factual averments of the complaint as true and to draw all reasonable inferences in favor of the plaintiff. *Kiely*, 105 F.3d at 735. Granting the motion is appropriate only where it appears clearly from the complaint that the plaintiff cannot recover under any theory, under any set of facts that could be proved consistent with the allegations. *Id.*

### B. *Exhaustion of Administrative Remedies Under Mass. Gen. L. c. 151B and Title VII (Counts I and IV)*

The individual defendants contend that Chatman's Chapter 151B and Title VII claims should be dismissed because Chatman has not exhausted her administrative remedies as to them.[8] These defendants assert

---

However, on a Rule 12(b)(6) motion, the court may consider public records and other documents referred to in the complaint, without treating the motion as one under Rule 56. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). The MCAD Charge is a public record and is also referred to in the complaint. Therefore, the court has taken it into account in connection with its consideration of the present Rule 12(b)(6) motion.

**7.** This section of Chapter 151B allows a charging party to dismiss the charge filed with the MCAD within ninety days after filing (or sooner if a commissioner of the MCAD consents in writing) and commence a civil action.

**8.** In light of the disposition of the Title VII claims against the individual defendants, discussed in Section V.C, of this opinion, the discussion in this section is limited to the Chapter 151B claims. Unlike Title VII, Chapter 151B creates individual liability for various kinds of discrimination (including sexual harassment) with respect to employers as well as persons other than employers. *See, e.g.*, Mass. Gen. L. c. 151B §§ 4, Subsections 4A, 5 and 16A. *See also Ruffino v. State Street Bank and Trust Co.*, 908 F.Supp. 1019, 1048 (D.Mass.1995) (holding that individual liability exists under c. 151B). In apparent recognition of this, the individual defendants do not claim, as they do with respect to Title VII (discussed in section V.C of this opinion), that there is no individual liability under Chapter 151B. Their claim as to Chapter 151B is that they were not appropriately identified in the

that they were not named as respondents in the MCAD Charge. Rather, they say, Chatman only identified "Gentle Communications" and "Gentle Dental centers" in that section of the charge form requiring that she name the parties who are alleged to have discriminated against her. For that reason, the individual defendants say, Chatman's claims against them in counts I and IV must be dismissed.

 Massachusetts law requires that a person bringing a claim of discrimination under Chapter 151B first file a charge of discrimination with the MCAD within 180 days of the conduct of which the complaint is made. Mass. Gen. L. c. 151B § 5. Regulations implementing Chapter 151B provide that the charge must include "appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts." 804 CMR 1.03(4), (a). Failure to file a proper charge with the MCAD is fatal to a later claim filed in court under Chapter 151B. *Andrews v. Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 673 N.E.2d 40, 41 & n. 1 (1996) (Rescript). "The purpose of th[e] requirement [of filing a charge with the MCAD] is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996). The failure to name a party in a charge filed with the MCAD may preclude the plaintiff from later maintaining a Chapter 151B claim in court against that party. *Powers v. H.B. Smith Co., Inc.*, 42 Mass.App.Ct. 657, 679 N.E.2d 252, 258 (1997) *review denied*, 425 Mass. 1105, 682 N.E.2d 1362 (1997).

Neither the Massachusetts Supreme Judicial Court nor any Massachusetts appellate court, however, has laid out the precise contours of the kind of identification of the alleged wrongdoer that must be made in a charge filed with the MCAD in order to preserve a later civil action against that person in court. One Massachusetts trial court, however, has ventured an opinion on the question. In ruling on a motion for summary judgment in *Sobotka v. Westfield Savings Bank*, 1994 WL 879775 (Mass.Super. April 21, 1994), that court considered a lawsuit stemming from a charge Sobotka filed with

the MCAD that had listed only the Westfield Savings Bank in the part of the charge form that called for the name of the party alleged to have discriminated against her. In the section of the form asking for particulars of the charge, however, Sobotka alleged that "upper level management" contributed to the discrimination, but she did not specifically name a person to whom the phrase "upper level management" referred. The court held that the reference in the "particulars" section of the charge to "upper level management," was adequate to notify the comptroller in, and arguably to identify him of, the charge, so that the plaintiff was not precluded from including the comptroller as a defendant in the ensuing court action. *Id.* at *2. The court did not rely on the charge itself for evidence that the comptroller had had notice of the charge, but pointed to correspondence of the comptroller to the MCAD, in which the comptroller denied the charge, as evidence not only that he had had notice of the charge, but that he had participated in the conciliation process. *Id.* at *3. The court thus held that, because the two purposes of the requirement for filing a charge with the MCAD—notice and an opportunity to conciliate—had been fulfilled with respect to the comptroller, "to dismiss Sobotka's c. 151B claim [against the comptroller] would be to unnecessarily put form over substance." *Id.* at *2. *But see Riebold v. Eastern Casualty Ins. Co.*, 1997 WL 311523, at *5 (Mass.Super. June 4, 1997) ("Because the MCAD complaint failed to identify [two individuals] in the indicated box, 'appropriate identification' [of them] was not set forth," even if those persons were referred to in the "particulars" section of the charge.)

The Massachusetts Supreme Judicial Court's decision in *Brunson v. Wall*, 405 Mass. 446, 541 N.E.2d 338, 341 (1989), while directed to an issue not raised in this case, nevertheless offers guidance on the course to be followed when the conduct of a party, not named as a respondent in a charge filed with the MCAD, forms at least part of the basis for a claim that another party has violated Chapter 151B. In *Brunson*, the plaintiff filed a charge of racial discrimination with the

MCAD Charge and therefore no claim lies against them in this action for violating that

statute.

MCAD, naming only her employer as the party who discriminated against her. When the MCAD dismissed the complaint with prejudice, concluding that the plaintiff had not been the victim of discrimination, the plaintiff, rather than seek review of that decision, filed suit in the superior court against the employer and the individuals whose actions were alleged to have constituted the discriminatory conduct. The superior court dismissed the action on the ground that the plaintiff's claims of discrimination were precluded by the MCAD decision. On appeal, the Supreme Judicial Court affirmed, holding, as to the claims brought against the individual defendants: "While the individual defendants were not named parties in the MCAD proceeding, their conduct was at issue. The MCAD's decision indicates that the commission concluded that the actions of the individual defendants were not based on the plaintiff's race or color." *Id.* 541 N.E.2d at 341. In deciding the issue preclusion question, the court thus considered, not just the explicit naming of a party as a respondent in the charge form filed with the MCAD, but the charge as a whole and whether the defendants had been afforded an opportunity to litigate fully and fairly the discrimination claims against them. Concluding that the MCAD did offer a forum for the full and fair litigation of those claims, the Supreme Judicial Court upheld the trial court's dismissal of the civil action. *Id.*

The teaching of *Brunson*, made applicable to the present circumstances, amounts to this: whether a party has been appropriately identified as a wrongdoer in a charge filed with the MCAD so as to support a subsequent civil action against that party is a matter to be determined from a reading of the charge as a whole. If the charge put that party's conduct at issue and if the party was on notice of the charge and had an opportunity to participate in the MCAD proceeding, then the party appropriately may be named as a defendant in a later civil complaint alleging a violation of Chapter 151B.

In interpreting Massachusetts anti-discrimination statutes, Massachusetts courts often seek guidance from interpretations of analogous federal statutes, although, of course, Massachusetts courts are not bound by those interpretations. *College–Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 508 N.E.2d 587, 591 (1987).

An obvious starting place for inquiry into how federal anti-discrimination laws have been interpreted is First Circuit precedent on Title VII. The First Circuit, however, has not decided directly the nature of the identification of a party that must be made in an administrative charge of discrimination so that that party may be properly held to answer in an ensuing civil action for discrimination (adverting to, without deciding, whether factors set forth in *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977), *vacated on other grounds*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), are to be considered in determining whether a party is appropriately identified in an administrative charge).

The First Circuit, however, has made at least one statement *en passant* on the subject of the consequences, for subsequent litigation, of the failure to name a party as a respondent in a charged filed with the MCAD. In *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 578 (1st Cir.1992), the court noted that a civil action for discrimination cannot be maintained under Massachusetts law against a party not named in a charge filed with the MCAD. The entire discussion, confined to a footnote, was:

> August's claim of discrimination on the basis of a handicap, the sole claim on appeal, can be maintained only against OUI [the employer], as the other two defendants were not named as respondents in a charge of discrimination filed by August with the Massachusetts Commission Against Discrimination. See Mass. Gen. L. ch. 151B, §§ 5, 9. At the request of OUI's counsel, August moved for voluntary dismissal of his appeal as to those two defendants. That motion was granted by this court on January 14, 1992. Thus, OUI is the only appellee in this case.

981 F.2d at 578 n. 2. This statement, however, does not dispose of the issue now before the court. First, because the claims against the individual defendants in *August* were voluntarily dismissed by the plaintiff, the

statement by the First Circuit is merely *dicta*. Second, there is no discussion about the content of the charge filed with MCAD and whether the individual defendants had notice and an opportunity to participate in the MCAD proceedings.

Other circuits have spoken more definitively on the question of what constitutes appropriate identification of a party in an administrative charge of discrimination. Speaking with various formulations, these courts have, in effect, held that the failure to name a party as a respondent in an administrative charge of discrimination is not fatal to a later lawsuit against that party, so long as the charge was sufficient to give the party notice and the party had an opportunity to conciliate the charge at the administrative level. Thus, in *Ortez v. Washington Cty.*, 88 F.3d 804, 808 (9th Cir.1996), the Ninth Circuit reversed a district court which had dismissed a Title VII claim based on the plaintiff's failure to name an individual as a respondent in an administrative charge. The Ninth Circuit held that "[d]efendants not named in the EEOC complaint can be sued under Title VII where such individuals should have anticipated being named in a Title VII action arising from the complaint." *Id.* (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir.1990)). The Seventh Circuit holds a similar view. *Eggleston v. Chicago Journeymen Plumbers' Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). The Third and Eleventh circuits, for their parts, have set out a number of factors for courts in those circuits to consider in deciding whether the failure to name a party as a respondent in an administrative charge of discrimination is fatal to a later claim of discrimination in a civil suit against that defendant. *Glus*, 562 F.2d at 888; *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1359 (11th Cir.1994) [9]; *see also Winbush v. State of Iowa by Glenwood State Hosp.*, 66 F.3d 1471, 1478 n. 9 (8th Cir.1995) (finding "sufficient identity of interest" between named and unnamed defendants so as to provide notice of the EEOC charges to the unnamed defendants); *Nogueras v. University of Puerto Rico*, 890 F.Supp. 60, 63 (D.P.R.1995) (plaintiff complies with Title VII "by naming the defendant in the charge or by alleging facts in the charge from which it could be inferred that the defendant violated Title VII"); *Douglas v. Coca–Cola Bottling Co.*, 855 F.Supp. 518, 521 (D.N.H.1994) (finding defendant sufficiently identified in administrative complaint when named in particulars).

■ These federal cases share at least one important theme with *Brunson*: whether a civil action will lie against a party not specifically named a respondent in an administrative charge will depend on the opportunity afforded in the prior proceeding for the resolution of that party's interests in the claim in dispute. Given that important theme and given the requirement that Chapter 151B be liberally construed to meet its goals of implementing the right to equal treatment guaranteed to all citizens, Mass. Gen. L. c. 151B § 9; *Katz v. MCAD*, 365 Mass. 357, 312 N.E.2d 182, 187 (1974), the court concludes that, faced with the question, the Massachusetts Supreme Judicial Court would hold that failure to name a party as a respondent in a charge filed with the MCAD does not preclude a later civil action against that party if the conduct of the party was put in issue by the charge and the party had notice of and an opportunity to conciliate the charge. *See Brunson*, 541 N.E.2d at 341; *Lattimore*, 99 F.3d at 464; *Sobotka*, 1994 WL 879775, at *3. It is in that context then that the court will consider the claims against the individual defendants.

■ As noted earlier, Chatman failed to identify the individual defendants in that part of the MCAD Charge that asked her to identify the party that had discriminated against her. In that part of the charge, she

---

**9.** The Eleventh Circuit, for example, considers the following factors important: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by being excluded from the EEOC proceedings. *Virgo*, 30 F.3d at 1359.

only identified Gentle Communications and the two Gentle Dental centers. When asked in the charge form to describe the particulars of her charge, however, Chatman set out in detail the conduct of the individual defendants which she claims constituted discrimination and sexual harassment. She thus put the conduct of these defendants in issue in the *Brunson* sense.

■ It is not possible to determine from the matters properly before the court, however, whether the individual defendants had notice of and an opportunity to conciliate the charges against them at the MCAD. The complaint is silent on this subject. In her brief in opposition to the present motion and in papers accompanying the brief Chatman alleges facts concerning the notice to and participation of the individual defendants in the proceedings before the MCAD. The court, however, may not consider those allegations in connection with the instant motion. With some exceptions, not relevant to the present question, the court, on a motion to dismiss, is limited in its consideration of the legal sufficiency of a plaintiff's claim to those facts alleged in the complaint and the inferences that may reasonably be drawn from those alleged facts. *See Watterson*, 987 F.2d at 3. Because the complaint here does not allege that the individual defendants had notice of the MCAD Charge and an opportunity to conciliate it and because notice and an opportunity to conciliate cannot be reasonably inferred from allegations in the complaint, the claims asserted in counts I and IV are dismissed as to the individual defendants. The claims asserted in those counts with respect to Gentle Communications, however, remain viable.

Because the deficiencies in counts I and IV as to the individual defendants may be curable, however, Chatman is given leave to amend the complaint. The amended complaint must be filed within ten days of the date of this opinion.

## C. *Individual Liability under Title VII*

The defendants contend that Chatman's Title VII claim, brought against the individual defendants (count IV), cannot be maintained, because individuals are not personally liable under Title VII.

Section 2000e–2(a) of Title VII prohibits an employer from engaging in discrimination in the workplace.[10] The statute provides, in relevant part, that it is unlawful for an employer:

> (1) to fail-or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

An "employer" includes a "person engaged in an industry . . . *and any agent of such person.*" 42 U.S.C. § 2000e(b) (emphasis added).

Whether an employee (especially an employee with supervisory authority over other employees) of an allegedly discriminating employer entity is an "agent" of that employer entity, and thus may be held liable under Title VII, has not been decided in the First Circuit. *Morrison*, 108 F.3d at 444 (court expressly declined to decide the question in light of the circumstances of the case and in the absence of developed argument by the parties). District courts within the Circuit have taken contrary positions on the question. *Compare, e.g., Danio v. Emerson College*, 963 F.Supp. 61, 62 (D.Mass.1997) (Young, J.) (no individual liability under Title VII); *Quiron v. L.N. Violette Co. Inc.*, 897 F.Supp. 18, 19–20 (D.Me.1995) (Brody, J.) (re-considering earlier position taken in *Weeks v. State of Maine*, 871 F.Supp. 515, 517 (D.Me.1994), the court rejects individual liability under Title VII); and *Hernandez v. Wangen*, 938 F.Supp. 1052, 1064 (D.P.R.1996) (Laffitte, J.) (no individual liability under Title VII), *with Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526, 528–529 (D.N.H.1993) (Devine, J.) (supervisors may be personally liable as "agents" of an "employer" under title VII); *Iacampo v. Hasbro, Inc., et al.,*

---

**10.** Sexual harassment can be a form of sex discrimination actionable under Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986); *Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436–37 (1st Cir.1997).

929 F.Supp. 562, 571 (D.R.I.1996) (Lagueux, J.) (same); *Ruffino,* 908 F.Supp. at 1047–48 (Gertner, J.) (recognizing individual liability of supervisory and apparently of non-supervisory employees, as well, under Title VII).

As for the view of the other circuits on the question of individual liability, there appears to be an emerging consensus that an employee who does not otherwise qualify as an "employer," is not individually liable under Title VII. Of the eleven circuits that have addressed the question, ten have rejected the imposition of individual liability under Title VII. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2nd Cir.1995) (individual supervisors exercising control over plaintiff are not personally liable under Title VII); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1078 (3rd Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) (holding that Congress did not intend to hold individual employees liable under Title VII); *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.1994) *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994) (no individual liability unless individual defendant meets Title VII's definition of "employer"); *Wathen v. General Elec. Co.,* 115 F.3d 400, 405 (6th Cir.1997) (individual employee/supervisor who is not otherwise an employer cannot be held personally liable under Title VII); *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995) (no individual liability under Title VII); *Bonomolo–Hagen v. Clay Central–Everly Community Sch. Dist.,* 121 F.3d 446, 1997 WL 467573 (8th Cir. 1997) (supervisors may not be held individually liable under Title VII); *Miller v. Maxwell's Int'l. Inc.,* 991 F.2d 583, 588 (9th Cir. 1993) *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) (holding that individuals cannot be held liable for damages under Title VII); *Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir.1996) (reaffirming *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993), court holds that Title VII "liability is appropriately borne by employers, not individual supervisors"); *Smith v. Lomax,* 45 F.3d 402, 403–404, n. 4 (11th Cir.1995) (no individual liability under Title VII); *Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.) *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995) (individual supervisors not personally liable under Title VII).

The one circuit to take a contrary view is the Fourth, which has held that a supervisory employee who exercises significant control over the hiring, firing, or conditions of employment of a plaintiff alleging a claim under Title VII is an "employer" for purposes of Title VII and may be sued in his individual capacity. *Paroline v. Unisys Corp.,* 879 F.2d 100, 104, (4th Cir.1989), *modified on other grounds,* 900 F.2d 27 (4th Cir.1990). But the viability of Paroline is in doubt, even in the Fourth Circuit, in the wake of that circuit's decision in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.), *cert. denied,* 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). In *Birkbeck,* the Fourth Circuit held that the use of the term "agent" as part of the definition of employer in the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 630(b), did not impose individual liability on an employee who had responsibility for the layoff of the plaintiff. The court reasoned that there was no individual liability under the ADEA for "personnel decisions of a plainly delegable nature." *Birkbeck,* 30 F.3d at 510, n. 1; *see also White v. CMA Construction Co., Inc.,* 947 F.Supp. 231, 234–35 (E.D.Va.1996) (noting controversy over whether *Birkbeck* eviscerated the holding in *Paroline;* collecting cases reflecting intracircuit split).

At the heart of the controversy is whether, by including the term "agent" in the definition of "employer," *see* 42 U.S.C. § 2000e(b), Congress intended to impose individual liability on those employees of the employer entity who act in a supervisory capacity, with authority to hire and fire other employees. Those courts that have held that supervisory employees may be held liable under the "agent" language have focused on what they call "the plain meaning" of § 2000e(b). *See, e.g., Tomka,* 66 F.3d at 1318 (Parker., J., dissenting); *Paroline,* 879 F.2d at 104; *Iacampo,* 929 F.Supp. at 572; *Ruffino,* 908 F.Supp. at 1047–48. This view holds that when the statute is read literally, the inclusion of the phrase "and any agent of such person" means that the employee/agent is a person, separate from the employer, who

may be liable individual for his own acts in violation of Title VII. *Ruffino,* 908 F.Supp. at 1048 ("Most simply ... the plain meaning of Section 2000e(b): [is] that both employers, as entities, and their agents, as individuals, are to be bound by Title VII's dictates."). The contrary view is that the use of the word agent merely expresses traditional notions of *respondeat superior* liability: that the employer is liable for the acts of an employee acting within the scope of the employer's employment. *See Tomka,* 66 F.3d at 1316; *see also Birkbeck,* 30 F.3d at 510 (noting similarity between ADEA and Title VII and holding that use of the term agent in the definition of employer in ADEA is "an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer.").

■ In a case that requires construction of a federal statute, the first question a court must ask is whether the statute's meaning is plainly stated in its words. If the words are a clear expression of congressional intent, the inquiry need go no further. *See, e.g., Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) ("In a statutory construction case, ... when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished."); *United States v. Meyer,* 808 F.2d 912, 915 (1st Cir.1987). The Supreme Court has said, however, that "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107

S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) (quotations omitted).

In this case, the language in § 2000e(b) appears to be clear at first glance. A literal reading of the phrase "and any agent of such person" appears to indicate that each of the employer entity and its employee/agent can have separate liability under Title VII. *Ruffino,* 908 F.Supp. at 1048. However, the language is far from clear when read in conjunction with other provisions of Title VII. For example, provisions in Title VII impose on the employer the duty to keep certain employment records, 42 U.S.C. § 2000e–8(c), and the duty to post notices, 42 U.S.C. § 2000e–10.[11] If "employer" were read consistently throughout the statute to include supervisors as agents of the employer, it would lead to the problematic result that individual supervisors would also shoulder these burdens. *See Hernandez,* 938 F.Supp. at 1064. It is unlikely that Congress intended to impose such administrative duties on individual supervisors. In addition, Title VII's equitable damages provision permits a court to order the "reinstatement or hiring of employees." *See* 42 U.S.C. § 2000e–5(g)(1).[12] In most situations, only the employer entity, and not the individual employee/agent, can offer this remedy.

Thus, because a literal reading of § 2000e(b) leads to ambiguity and inconsistencies within Title VII as a whole, the court is required to inquire into the legislative intent underlying the statute. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

The court is fortunate in not having to undertake this task as a matter of original

---

**11.** 42 U.S.C. § 2000e–8(c) provides, in relevant part,

Every employer ... subject to this title shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods ...

42 U.S.C. § 2000e–10 provides, in relevant part,

(a) Every employer ... shall post and keep posted in conspicuous places upon its premises ... summaries of, the pertinent provisions of this title and information pertinent to the filing of a complaint.

(b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense.

**12.** 42 U.S.C. § 2000e–5(g)(1) provides, in relevant part,

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay ..."

inquiry. A number of courts have already traversed the paths that lead to understanding of the intent of Congress in its use of the word "agent" in § 2000e(b). *See, e.g., Miller,* 991 F.2d at 587–88 (examining legislative history of Title VII); *Tomka,* 66 F.3d at 1313–16 (same).

In a leading recent opinion, the Second Circuit thoroughly analyzed Title VII and its legislative history, and observed that the agent clause is part of a sentence that limits liability to employers with fifteen or more employees. Agreeing with the analysis of the Ninth Circuit in *Miller* and pointing to relevant Senate debate on the bill that became Title VII, the court reasoned that Congress was concerned with the cost to small employers of litigating discrimination claims. It is therefore "inconceivable," said the court, that "a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." *Tomka,* 66 F.3d at 1314, (citing *Miller,* 991 F.2d at 587).

Turning to remedial provisions of Title VII, the court noted that, before the enactment of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (the "1991 Act"), "a successful Title VII plaintiff was typically limited to reinstatement and backpay ... which are most appropriately provided by employers, defined in the traditional sense of the word." *Id.* The court reasoned further that, with the passage of the 1991 Act, Congress explicitly set forth, in the remedial provisions, certain caps on the compensatory and punitive damages that may be awarded against employer entities, calibrated to the size of the employer. The court noted, however, that Congress did not repeal the exemption for defendants with less than fifteen employees. The court also noted that no similar limits on damage awards against agents was enacted; nor was the subject of individual employer liability even addressed. It thus appeared to the

Second Circuit, as it had to the Ninth Circuit, that Congress had contemplated that only employer entities, and not individual employees as agents of the employer entity, could be held liable for compensatory and punitive damages because

> if Congress had envisioned individual liability ... it would have included individuals in this litany of limitations and discontinued the exemption for small employers ...

*Id.* at 1315 (*quoting Miller,* 991 F.2d at 588 n.2).

The Second Circuit offered an alternative interpretation of the agent clause in Title VII. Relying on the Supreme Court's decision in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Second Circuit concluded that the word "agent" defines and limits the scope of employer liability for acts of employers, so that an employer is not liable for everything an employee does, but rather that "an employer's liability should be based on common law agency principles." *Tomka,* 66 F.3d at 1316 (citing *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408). Viewed in this way, the agent clause is not "mere surplusage," [13] but serves an independent purpose. *Id.*

■ The court is persuaded by the Second Circuit's reasoning that, when read in the full context of Title VII, § 2000e(b), cannot be interpreted to create individual liability on the part of individual employees of the employer entity. Therefore this court weighs in with the nearly-unanimous view of the federal circuits that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held liable under Title VII. Accordingly, the Title VII claims brought against the individual defendants in count IV are DISMISSED.

---

13. A criticism leveled at those courts which hold that the agent clause is a codification in Title VII of the respondeat superior doctrine is that that approach renders the word "agent" as used in § 2000e(b) "mere surplusage" because an employer, under agency principles, is responsible for the acts of his employees acting in the course of their employment. *See Tomka,* 66 F.3d at

1319 (Parker, J., dissenting) ("Absent this [agent] clause, Title VII would nevertheless permit *respondeat superior* liability against employers for the acts of their agents under common law liability principles."); *Ruffino,* 908 F.Supp. at 1047 (inclusion of "agents" not mere "verbal surplusage").

D. *Exclusivity under the Massachusetts Workers' Compensation Act*

The defendants assert that the Workers' Compensation Act (the "Act"), M.G.L. c. 152, bars Chatman from bringing separate claims of assault, battery and intentional infliction of emotional distress (counts V–VII) against the individual defendants.

 In substance, the exclusivity provision of the Act provides that the Act shall be the exclusive remedy for personal injuries arising out of employment, unless at the time of forming the employment contract, the employee reserved his or her right of action for such injuries. *See* Mass. Gen. L. c. 152, § 24.[14] The Act bars claims not only against the insured employer, but also claims against co-employees acting within the scope of their employment. *Anzalone v. Massachusetts Bay Transportation Auth.*, 403 Mass. 119, 526 N.E.2d 246, 249 (1988). In addition, the Act not only covers claims for personal injuries stemming from negligence, but also claims for intentional torts committed in the course of the employment relationship. *Doe v. Purity Supreme*, 422 Mass. 563, 664 N.E.2d 815, 818 (1996) ("Except for certain exceptions not applicable here, intentional torts are covered by the [Act], even when they are committed by coemployees."); *Anzalone*, 526 N.E.2d at 249; *Tennaro v. Ryder System Inc.*, 832 F.Supp. 494, 500 (D.Mass. 1993).

 Chatman nevertheless asserts that, under the authority of *O'Connell v. Chasdi*, 400 Mass. 686, 511 N.E.2d 349 (1987),[15] she may maintain the tort claims against the individual defendants, because these claims are brought against individual employees, not the employer entity. This argument is unavailing in the circumstances of this case. Chatman specifically alleges that the individual defendants were acting within the scope of their employment when they committed the intentional torts at issue in this case. Complaint ¶¶ 17, 42, 59, 63, 67. These allegations, which must be taken as true, in themselves make applicable the Act's exclusivity provision to Chatman's intentional tort claims. Accordingly, the assault, battery and intentional infliction of emotional distress claims (counts V–VII) are DISMISSED.

## VI. SUMMARY

The motion to dismiss the Title VII claim in Count IV is GRANTED as to the individual defendants. The motion to dismiss the Chapter 151B claims, made in counts I and IV against these defendants is also GRANTED, but with leave given Chatman to amend those counts to correct the deficiencies that, in the present complaint, have resulted in dismissal. Any amendment to the complaint must be filed within ten days of the date of this opinion. Counts I and IV in their present form remain as to Gentle Communications. The motion to dismiss the intentional tort claims, Counts V–VII, is GRANTED.

SO ORDERED.

14. M.G.L.c. 152, § 24 provides, in relevant part, Waiver of right of action for injuries.
 An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . .

15. In *O'Connell*, the plaintiff brought actions for assault, battery and intentional infliction of emotional distress against a co-employee arising out of alleged sexual harassment. The jury returned verdicts in favor of the plaintiff on these claims, but the trial judge granted judgment notwithstanding the verdict. The judge held that her claims were barred by the Act's exclusivity provision. In reversing the trial court, the SJC held that these claims were not barred, stating that "[w]here a fellow employee commits an intentional tort not related to the interests of the employer . . . the policies behind the [Act] would not be served by immunizing the coemployee. . . . . Such intentional torts are not an accepted risk of doing business". *Id.* at 690–691, 511 N.E.2d 349.