**Madonna CHAPIN, Plaintiff**

v.

**UNIVERSITY OF MASSACHUSETTS AT LOWELL, Paul Parent, George Theokas, and James W. Rowe, Defendants**

**Civil Action No. 96–10291–RCL.**

United States District Court,
D. Massachusetts.

Sept. 11, 1997.

---

Wendy A. Kaplan, Boston, MA, Mark D. Stern, Law Office of Mark D. Stern, P.C., Somerville, MA, Floyd H Anderson, Kassler & Feuer, P.C., Boston, MA, for Madonna Chapin.

Peter M. Michaelson, University of Massachusetts, Boston, MA, for University of Massachusetts at Lowell, James W. Rowe.

Lawrence D. Humphrey, Joseph G. Donnellan, International Brotherhood of Police Officers, Quincy, MA, Paul Parent.

Thomas Sweeney, Eliades & Barry, Lowell, MA, for George Theokas.

*Memorandum and Order on Motion to Dismiss Procedural Background*

LINDSAY, District Judge.

This case involves the alleged sexual harassment of the plaintiff, Madonna Chapin, while she was employed as an officer of the Police Department of the University of Massachusetts at Lowell ("UML"). Now before the court are motions filed by James Rowe, the chief of the UML Police Department, and George Theokas, a sergeant of the UML Police Department, to dismiss the second amended complaint[1] No motion has been filed by defendant Paul Parent, an officer of the UML Police Department alleged to be an acting shift supervisor during the period relevant to the second amended complaint. Chapin complains of employment discrimination by UML, in violation of Title VII (count one); aiding and abetting discrimination by Parent, Theokas, and Rowe, in violation of Mass. Gen. L. ch. 151B § 4(5) ("ch. 151B § 4(5)") (count two); sexual harassment

against Parent and Theokas, prohibited by Mass. Gen. L. ch. 214 § 1C ("ch. 214 § 1C") (count three); violation of her civil rights (presumably under 42 U.S.C. § 1993) by Parent, Theokas, and Rowe (count four); assault and battery upon her by Parent and Theokas (count five); and intentional infliction of emotional distress upon her by Parent and Theokas (count six).

Defendant Rowe has moved to dismiss the two remaining claims against him, aiding and abetting discrimination (count two) and the claim for civil rights violation (count four). Defendant Theokas has moved to dismiss all of the remaining claims against him, counts two through six.

*Facts*

On a motion to dismiss, the court is required to take all of the allegations in the complaint as true and to draw, in the plaintiff's favor, all reasonable inferences from those allegations. *See Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir.1997). The motion will be granted only if it is clear that there is no set of facts or theory, consistent with the allegations, upon which plaintiff can recover. *Id.*

The complaint alleges the following as facts.

Even before Chapin was employed at UML, female officers at the UML Police Department experienced sex discrimination including, among other things, sexual harassment. Second Amended Complaint ¶ 16 ("Comp."). The chief and other supervisory officers knew, or should have known, about the discrimination and harassment, but failed to take any action to prevent or remedy the misconduct. Comp. ¶ 17 Chapin commenced employment at the UML Police Department on February 14, 1993.[2] Comp. ¶ 18. While employed there, she experienced sexual harassment by, among others, Parent and

---

1. UML also filed a motion to dismiss before the second amended complaint was filed. The claims that the UML motion challenged have been eliminated in the second amended complaint. The only remaining claim against UML is for sex discrimination under 42 U.S.C. § 2000e ("Title VII"), and UML does not challenge the sufficiency of the allegations in this claim.

2. At that time, Chapin's name was Madonna Ramp. She has since married and changed her name to Madonna Chapin. The court will refer to her in this memorandum and order by her current, married name.

Theokas. The harassment included threats to her physical and mental health; statements to and in the presence of Chapin, disparaging of her and of women in general; sexual gestures; solicitation of complaints about Chapin's performance; and false accusations about her performance. Comp. ¶¶ 19–20. Chapin complained of the harassment, but UML and Rowe did not investigate her claims until after she had left her employment at UML. Comp. ¶ 21, ¶ 24. UML failed to take steps adequate to prevent or remedy the harassment of Chapin. Comp. ¶¶ 22–23. Chapin was constructively discharged from UML on May 26, 1993. Comp. ¶ 19. As a consequence of the harassment and UML's failure to correct it, Chapin has suffered severe and disabling emotional distress such that she has been unable to work. Comp. ¶¶ 26–27. She filed an administrative charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and with the United States Equal Employment Opportunity Commission ("EEOC") on August 16, 1993. Comp. ¶ 7. After a finding of probable cause by the MCAD, Chapin requested that the MCAD close her case so that she might commence the present action. On February 9, 1996, the MCAD agreed to terminate, without prejudice, the action then pending before it. At about the same time, the plaintiff received a "right to sue" letter from the EEOC. Comp. ¶¶ 8–12.

### Analysis

1. Motions of the Defendant Rowe

 a. Aiding and Abetting Discrimination

 Rowe contends that the claim against him under ch. 151B § 4(5), for aiding and abetting discrimination, must be dismissed for three reasons. First, he argues that he was not named in the administrative charge filed with the MCAD (the "MCAD Charge") and that Chapin is therefore barred from bringing a civil suit against him. Next, he argues that Chapin has not alleged sufficient action on his part to constitute "aiding and abetting." Third, he claims that if the court

dismisses the § 1983 claim against him, it will lack jurisdiction over him for any state-law claims.

(1) Identification of Rowe in the MCAD Complaint

■ Rowe argues that he was not sufficiently named in the MCAD Charge to permit Chapin now to maintain this civil suit against him. This court has recently addressed the question of what constitutes sufficient identification of a party in a charge filed with the MCAD to sustain a subsequent civil suit against that party. See *Chatman v. Gentle Dental Center of Waltham, et al.*, 973 F.Supp. 228 (D.Mass.1997). Guided by the Supreme Judicial Court's decision in *Brunson v. Wall*, 405 Mass. 446, 541 N.E.2d 338 (1989), and by other courts' interpretations of Title VII, this court concluded that "faced with the question, the Massachusetts Supreme Judicial Court would hold that failure to name a party as a respondent in a charge filed with the MCAD does not preclude a later civil action against that party if the conduct of the party was put at issue by the charge and the party had notice of and an opportunity to conciliate the charge." *Chatman*, 973 F.Supp. at 235. In light of the ruling in *Chatman*, the question to be answered in the case at bar is whether Rowe's conduct was put at issue by the MCAD Charge and whether Rowe had notice of and an opportunity to conciliate the MCAD Charge.

■ The MCAD Charge nowhere identifies Rowe by name. Chapin argues, however, that Rowe is adequately identified in the following language from that section of the MCAD Charge in which Chapin was asked to give particulars of her claim of discrimination: "Management or other officials overseeing the Police Department observed or were otherwise aware of Officer Parent harassing Officer [Chapin] and/or other female officers in the Department and did nothing to stop him from doing so." [3] MCAD Charge, at 3.

---

3. The MCAD Charge may be considered on this motion to dismiss both because it was attached to and incorporated into the complaint and because it is a public document. See *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993).

Chapin has the better of the two arguments. The MCAD Charge rather clearly puts Rowe's conduct in issue. He is alleged in the complaint filed with this court to be chief of the UML Police Department. The MCAD Charge, among other things, complains of the failure of "management and other officials overseeing the Police Department" to remedy the harassment. That phrase may comprehend persons in management other than Rowe, but it surely can reasonably be inferred that the phrase includes Rowe in his role as police chief with responsibility for "overseeing the Police Department". *See Sobotka v. Westfield Savings Bank,* No. Civ.A.99332, 1994 WL 879775 (Mass.Super. April 21, 1994) (phrase "upper level management" sufficiently identified bank comptroller in charge filed with MCAD so that it was proper to name him as a defendant in later court action alleging discrimination).

Furthermore, the MCAD, in its investigation of probable cause with respect to the MCAD Charge, considered the role of management officials in the conduct of which Chapin complained: "There is information which indicates that management knew or should have known that there was behavior which constituted a hostile work environment. There is insufficient information to indicate that the Respondent took adequate steps to correct this environment, thus prohibiting the Complainant from returning to work." Probable Cause Finding, *Ramp v. University of Massachusetts, Lowell,* MCAD No. 93–BEM–1275, at 3 (July 14, 1995) ("Probable Cause Finding")[4] *see also Lattimore v. Polaroid Corp.,* 99 F.3d 456, 465 (1st Cir.1996) (looking to actual investigation conducted by MCAD to determine whether a particular claim made in civil suit could be said to have been reasonably within the scope of an investigation expected to flow from administrative charge). Thus it appears that the MCAD's actual investigation of the MCAD Charge encompassed the conduct of Rowe who, as chief of the UML Police Department, headed the "management" which the MCAD found probable

cause to believe had failed to take steps to correct the hostile environment of which Chapin complained.

■ Whether Rowe received notice or an opportunity to conciliate is a more difficult question. The second amended complaint contains no allegations on this question. It simply notes, in conclusory fashion, that the plaintiff filed an administrative charge, that the MCAD found probable cause, and that before a final decision on the merits was reached, the plaintiff requested that the administrative investigation be closed so that she could pursue the current lawsuit. Comp. ¶¶ 7–12. While the complaint does allege that defendant Rowe had knowledge of the harassment, Comp. ¶¶ 23–25, it contains no allegations that Rowe knew of the MCAD Charge.

The Probable Cause Finding, however, reveals information sufficient to support a reasonable inference that Rowe had knowledge of the MCAD Charge. The Probable Cause Finding notes that the "[i]nvestigation of this complaint includes both documentary and testimonial evidence provided by both parties. Included among the evidence considered were the complaint, the University's position statement, the Complainant's rebuttal, and the University's internal investigation report." Probable Cause Finding at 1. The internal investigation referred to was conducted by defendant Rowe. Probable Cause Finding at 2. Given that the Probable Cause Finding indicates that both parties gave testimonial evidence, that the MCAD relied for its findings on a report prepared by Rowe, and that UML prepared a position statement for the MCAD's consideration, it is reasonable to infer that, as chief of the UML Police Department, Rowe was significantly involved in the preparation of UML's response to the MCAD and therefore had knowledge of and was involved in the MCAD's investigation, and that he had an opportunity during that investigation to conciliate the claims made by Chapin. *See Sobotka,* 1994 WL 879775, at *3 (evidence that

---

4. Like the MCAD Charge, the Probable Cause Finding is a public document and is also incorporated into in the complaint. It may be considered, therefore, on this motion to dismiss. *See Watterson,* 987 F.2d at 3.

bank comptroller, not named as respondent in charge filed with MCAD, corresponded with MCAD to deny allegations made against him was evidence that comptroller had notice of and took part in conciliation process at MCAD). The court concludes, then, that Rowe was sufficiently identified in the MCAD Charge so that the present lawsuit may proceed against him.

### (2) Rowe's Conduct

■ Rowe also argues that the aiding and abetting claim under ch. 151B § 4(5) should be dismissed because Chapin has not adequately alleged any action on his part by which he "aided or abetted" in the harassment. Although Rowe's argument is not elaborated, the court understands it to be that the complaint must be read to say that Rowe did not actively participate in the harassment; at worst, Rowe claims, all that is alleged is that he failed to take action upon receiving reports of harassment. Rowe reads the complaint, therefore, as charging him with nonfeasance regarding the alleged sexual harassment, and he says that an allegation of mere nonfeasance is not enough to state a claim against him under ch. 151B § 4(5) for aiding and abetting the sexual harassment alleged in the complaint.

■ Chapter 151B § 4(5) makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Thus, individuals, including co-employees of the allegedly aggrieved employee, are liable for violations of this section. *See Ruffino v. State Street Bank & Trust Co.,* 908 F.Supp. 1019, 1048 (D.Mass.1995). No reported case of the Massachusetts Supreme Judicial Court, however, has addressed whether the failure of a supervisory employee to investigate, correct, or prevent sexual harassment, after it has been reported, amounts to aiding and abetting the harassment. Even so, the court is not without guidance on this question.

The Supreme Judicial Court accords deference to interpretations of ch. 151B rendered by the MCAD. *See College–Town v. MCAD,* 400 Mass. 156, 508 N.E.2d 587, 593 (1987) (looking to MCAD interpretation of ch.

151B). It is appropriate for this court, therefore, to look to the MCAD's interpretation of ch. 151B § 4(5) for guidance as to whether the Supreme Judicial Court would hold that nonfeasance of a supervisory employee, in the face of harassment or other discrimination of which he has actual or constructive knowledge, may constitute actionable aiding and abetting against that employee under ch. 151B § 4(5)

The MCAD has noted that the " '[f]ailure to investigate gives tacit support to the discrimination because the absence of sanctions encourages abusive behavior.' " *Jorge v. Silver City Dodge,* 15 MDLR 1518, 1531 (1993) (quoting *Munford v. James T. Barnes & Co.,* 441 F.Supp. 459, 466 (E.D.Mich.1977)); *Przybycien v. Aid Maintenance Co.,* 13 MDLR 1266, 1283 (1991) (same). Indeed, the MCAD has held a supervisor individually liable for aiding and abetting discrimination for *acquiescence* in a retaliatory firing of an employee who complained about sexual harassment. *See Hope v. San Ran, Inc.,* 8 MDLR 1195, 1211 (1986).

A second source of guidance is the interpretation of parallel laws in other states. In *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542 (3d Cir.1996), for example, the Third Circuit, interpreting Pennsylvania law, held that failure by a supervisor to take action to prevent known harassment gave rise to an aiding and abetting claim.

> As Dici's supervisor, Monaco is a proper defendant under § 955(e) [the Pennsylvania aiding and abetting employment discrimination statute] and might be liable for aiding and abetting discriminatory practices, as Dici has pleaded facts which, if true, could impose liability for violations of the [Pennsylvania Human Relations Act]. For example, in paragraph 14 of the complaint, Dici states, "[a]lthough Sergeant Monaco knew or should have known that the Plaintiff was being subject to ... harassment ..., he repeatedly refused to take prompt action to end the harassment directed at Plaintiff...." Such conduct, if proven, would constitute aiding and abetting.

*Id.* at 553; *see also Bonner v. Guccione,* No. Civ.A. 94–7735, 1997 WL 362311, at *15 (S.D.N.Y. July 1, 1997) (interpreting New York aiding and abetting statute and concluding that "Mr. Guccione can be held personally liable even absent a finding of active participation").

Other courts have reached the opposite conclusion. A district court in New Jersey, construing a New Jersey law identical to the Massachusetts statute, concluded that nonfeasance was not sufficient for individual liability. Working with a definition of "aiding and abetting" provided by a New Jersey intermediate appellate court, the court concluded:

> [W]e hold that it is necessary that a supervisor affirmatively engage in discriminatory conduct in order to find individual liability. Mere inaction, passivity, or acquiescence do not in our view rise to the level of aiding and abetting. They do not have the elements of willfulness, intent, or commonality of goals—of active purpose—that "aid or abet" requires. The principal wrong itself (of the employer) is mere inaction. To say that a supervisor who fails to act shares a common purpose with an employer who fails to act is too great a stretch, for inaction may be motivated by countless factors.

*Tyson v. CIGNA Corp.,* 918 F.Supp. 836, 841 (D.N.J.1996). Therefore, the court in *Tyson* refused to find individual liability, under the New Jersey aiding and abetting statute, where the plaintiff alleged that the aiding and abetting resulted from a failure to act in the face of the knowledge of the existence of sexual harassment. *Id.* at 842; *accord Fiol v. Doellstedt,* 50 Cal.App.4th 1318, 58 Cal. Rptr.2d 308, 313–14 (1996) (interpreting California aiding and abetting law and concluding that "mere inaction by a non-harassing supervisor does not constitute aiding and abetting") (2–1 decision). *But see Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396, 417 (D.N.J.1996) ("Reasonable minds can and do differ as to ... the degree of action or inaction required on the part of a supervisory employee in order to establish personal liability.").

Finally, federal courts in other contexts have noted that failure of a supervisor to respond to complaints of harassment can actively contribute to the creation of a hostile environment. *See, e.g., Saad v. Stanley St. Treatment & Resources, Inc.,* No. Civ.A. 92–11434, 1994 WL 846911, at *10 (D.Mass. May 20, 1994) (noting, in sexual harassment case under Title VII and ch. 151B, that "[n]o doubt an inadequate response to a sexual harassment complaint could itself foster a hostile environment and so give rise to liability therefor"). An individual supervisor, acting under color of state law, can also be held liable, under 42 U.S.C. § 1983, for failure to act to remedy harassment once the supervisor has either actual or constructive notice of the harassment. *See Jemmott v. Coughlin,* 85 F.3d 61, 67–68 (2nd Cir.1996) (failure of supervisor to respond to complaints of harassment can be sufficient for liability); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902 (1st Cir.1988).

A failure of an employer to act in the face of knowledge that sexual harassment is occurring in the workplace may result from one of two causes. It may result from inattention, that is from negligence; but it also may result from a conscious act of the will, that is, from deliberate indifference. *See Lipsett,* 864 F.2d at 902. In the latter case, the nonfeasance is not "mere inaction," but a designed and willful act of forbearance in a situation where action is required.

The complaint here alleges that Rowe had actual or constructive knowledge of the harassment and other discrimination, but failed to take action even to investigate the plaintiff's grievances. Comp. ¶ 17. Indeed, the complaint alleges that discrimination and sexual harassment had existed in the UML Police Department from a time before Chapin began work there and that Rowe knew about, but did nothing to remedy, this wrongdoing. Comp. ¶ 16, 17. From these allegations, a reasonable inference, to which the plaintiff is entitled, is that Rowe was deliberately indifferent to the plight alleged by the plaintiff, that his failure to act was not merely passive, but an affirmative condonation of the wrongdoing. *See Lipsett,* 864 F.2d at 902.

Furthermore, a failure to act on complaints of sexual harassment—whether the result of design or of inattention—may have a discernible impact in a hostile environment case. A deaf ear from management may contribute to and encourage the hostility of the workplace, creating an impression that employees may engage in sexual harassment or discrimination with impunity. In this sense, inaction on the part of a high official in management—someone like Rowe—may be an affirmative link to conduct that violates ch. 151B § 4(5). *Id; see also Saad*, 1994 WL 846911, at *10.

 Given the requirement stated in Mass. Gen. L. ch. 151B § 9, that ch. 151B as a whole is to be construed liberally so that its purposes may be achieved, and given the MCAD's interpretations of the aiding and abetting language of ch. 151B § 4(5), the court concludes that the Supreme Judicial Court would follow those courts that hold that non-action by a supervisory employee, with knowledge that sexual harassment or other prohibited discrimination is occurring in the workplace, is actionable by a victim of the wrongdoing as aiding and abetting under ch. 151B § 4(5). Specifically, the Supreme Judicial Court would hold that, in the circumstances of this case, Chapin states an actionable claim against Rowe under ch. 151B § 4(5) when she alleges that he had knowledge of sex discrimination, including sexual harassment, within the UML Police Department, but failed to act, and that that failure to act caused injury to Chapin.

### (3) Lack of Jurisdiction

 Rowe argues, finally, that if the § 1983 claim is dismissed, the court will lack jurisdiction over him with respect to the state-law claims. Because the court concludes, infra, that the § 1983 claim will not be dismissed, the court need not address this argument. The court notes, however, that Rowe is incorrect to the extent that he contends that the state-law claims against him *must* be dismissed if the federal claim is dismissed. Once the court obtains federal question jurisdiction over a case, it is within the court's discretion whether to maintain

jurisdiction over related state claims if the federal law claims are dismissed. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 622–23, 98 L.Ed.2d 720 (1988).

### b. 42 U.S.C. § 1983

 The remaining claim against Rowe is that he violated the plaintiff's civil rights under color of state law. A claim can be brought for sexual harassment under 42 U.S.C. § 1983 (" § 1983") against a person acting under color of state law.[5] *See Lipsett*, 864 F.2d at 895. Such a claim usually alleges a violation of the Equal Protection Clause. *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1185–89 (7th Cir.1986). The First Circuit has noted that the standards for sexual harassment are the same under both Title VII and the Fourteenth Amendment. *See Lipsett*, 864 F.2d at 896 ("Because a showing of discriminatory intent is also necessary to make out a claim of disparate treatment under Title VII, we have recognized that the analytical framework for proving discriminatory treatment under Title VII is equally applicable to constitutional and Title VII claims.") (alterations and quotations omitted), *reaffirmed in Pontarelli v. Stone*, 930 F.2d 104, 113 (1st Cir.1991). In *Lipsett*, the court described the circumstances in which a state official, supervising other employees, can be held liable, under § 1983, for the constitutional violations of his supervisors in a case like this:

> [W]e conclude that a state official, sued under section 1983 in his or her official or individual capacity, can be held liable for the behavior of his or her subordinates if (1) the behavior of such subordinates results in a constitutional violation and (2) the official's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference. An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a deliberate or conscious

---

**5.** UML, of which Rowe is police chief, is a state university.

choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps. Once an official is so notified, either actually or constructively, it is reasonable to infer that the *failure* to take such steps, as well as the actual *taking* of them constitutes a choice from among various alternatives. One obvious alternative is to do something to make the violations stop.

*Lipsett,* 864 F.2d at 902 (quotations and citations omitted) (emphasis in original). As noted above, Chapin has sufficiently alleged that Rowe was aware of the harassment and took no action to correct it. Thus, she has stated a claim under § 1983.

 One final contention made by Rowe regarding the § 1983 claim requires mention here. Rowe argues that, even if Title VII and § 1983 claims could be filed in one complaint before 1991, the 1991 amendments to Title VII, creating broader remedies under Title VII, preempts liability under § 1983. *Marrero–Rivera v. Department of Justice,* 800 F.Supp. 1024, 1031–33 (D.P.R.1992), reaches exactly this conclusion. More recently, however, courts in this circuit that have considered the question—including another court in the District of Puerto Rico— have reached the opposite result. *See Espada v. Woodroffe,* 896 F.Supp. 69, 70–71 (D.P.R.1995) (holding that Title VII does not preempt § 1983 claims, citing decisions from the 2nd, 4th, 5th, and 10th Circuits). The *Espada* court concluded that Congress did not intend to make Title VII the exclusive remedy for employment discrimination claims against public employers, but that § 1983 would "continue to provide plaintiffs with an independent cause of action through which they can seek redress of constitutional deprivations." *Id.* at 71; *see also Madon v. Laconia Sch. Dist.,* 952 F.Supp. 44, 48 (D.N.H.1996) (courts in First Circuit still bound by *Pontarelli* and *Lipsett* after passage of the 1991 amendment). The court agrees with the *Espada* court, and with the reasoning of the cases it cites, and holds that the 1991 amendments to Title VII do not prevent a § 1983 suit for sexual harassment.

2. Defendant Theokas

a. ch. 151B § 4(5)

Defendant Theokas argues that the ch. 151B § 4(5) claims against him must be dismissed. Chapin has alleged claims against Theokas on two separate theories under this statute. First, she has alleged that Theokas, a sergeant with supervisory authority over Chapin and defendant Parent, did not respond adequately when he was informed of Parent's harassment of Chapin. Second, Chapin alleges that Theokas engaged in harassment himself. Comp. ¶¶ 19–20. Theokas' contentions as to why those claims should be dismissed against him are addressed below.

(1) Failure to Act—Whether Theokas is Sufficiently Identified in the MCAD Charge

 Theokas first argues that he was not adequately named in the MCAD Charge and not put on notice by the MCAD Charge that he might be a defendant in a civil suit based upon his failure to remedy the harassment of Chapin by Parent. The court has outlined above the factors for consideration of this claim.

The MCAD Charge specifically states, as to Theokas, that Chapin "complained to Sgt. Theokas ... about Officer Parent's statements" and that "[a] number of officers and employees have witnessed some of the many ... incidents [of harassment]." MCAD Charge, at 2. The MCAD Charge alleges further that Theokas was among this "number of officers and employees" who witnessed the harassment. *See id.* Thus, it is plain that Theokas' actions were put in issue in the MCAD Charge.

 As to whether Theokas had notice that his conduct was at issue in the MCAD Charge, all that appears is a reference to Theokas in the Probable Cause Finding: "[I]nterviews conducted by acting Chief Patrick Reardon and Affirmative Action Officer Barbara Lyman exposed ... information" about, and admissions by, Theokas relating to his knowledge of Parent's harassment of Chapin. Probable Cause Finding, at 2. It appears that the MCAD relied, for its probable cause determination, on the interviews

conducted by UML in its internal investigation of Chapin's complaints, and did not re-interview many of the witnesses, including Theokas, before making its probable cause determination. It thus cannot reasonably be inferred from the Probable Cause Finding, or from anything else properly before the court, that Theokas had notice of and an opportunity to conciliate the MCAD Charge with respect to the claim now made that Theokas failed to act in the face of knowledge of Parent's harassment of Chapin.

Accordingly, this aspect of Chapin's ch. 151B § 4(5) claim, asserted in count two of the second amended complaint against Theokas, will be dismissed. Because the defect in count two noted here may be curable, however, Chapin is given leave to amend the second complaint. Such amendment shall be filed not later than ten days from the date of this memorandum and order.

### (2) Direct Harassment—Whether Theokas is Sufficiently Identified in MCAD Charge

■ Chapin claims that Theokas is also liable, pursuant to ch. 151B § 4(5), because he was a "perpetrator of harassment." Theokas responds that the MCAD charge never mentions any direct harassment by him. Therefore, he concludes, this claim must be dismissed as to him.

"The purpose of th[e] requirement [of filing a charge with the MCAD] is to provide [the alleged wrongdoer] with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore*, 99 F.3d at 464. That purpose "would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." *Id.*

Theokas is never identified in the MCAD Charge as directly harassing Chapin. No notice therefore was given to him about Chapin's claim of direct harassment against him, and nothing indicates that Theokas had an opportunity to conciliate this claim at the MCAD. Thus, to the extent that the complaint alleges direct harassment of Chapin by Theokas, it will be dismissed as a claim under ch. 151B § 4(5).

#### b. ch. 214 § 1C

■ In addition to her claim for direct harassment against Theokas under ch. 151B § 4(5), however, Chapin has also brought a claim against Theokas for that same conduct under ch. 214 § 1C. The claim of direct harassment may still survive if it can be brought as a claim under ch. 214 § 1C.

■ The filing of a charge of discrimination with the MCAD is not a prerequisite to bringing a claim for sexual harassment under ch. 214 § 1C. *See Guzman v. Lowinger*, 422 Mass. 570, 664 N.E.2d 820, 821–22 (1996). Therefore, if the plaintiff's claim pursuant to ch. 214 § 1C is proper, administrative exhaustion is not required. It is to the question of whether the claim of direct harassment in this case is exclusively a ch. 151B § 4(5) claim or a claim that may be brought under ch. 214 § 1C that the court now turns.

■ Chapter 214 § 1C states: "A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B and one hundred and fifty-one C. The superior court shall have the jurisdiction in equity to enforce this right and to award damages." The Supreme Judicial Court has recently addressed the interrelationship between this statute and ch. 151B in cases where allegations of sexual harassment in the workplace are made. That court has concluded that the two statutes do not create duplicative remedies. *See Green v. Wyman–Gordon Co.*, 422 Mass. 551, 664 N.E.2d 808, 811–12 (1996). Chapter 151B provides a comprehensive remedial scheme for employment discrimination applicable to Massachusetts employers of at least six persons; and, where it applies, ch. 151B is the exclusive statutory remedy for claims of discrimination, including claims for sexual harassment. *See id.* 664 N.E.2d at 811. Chapter 214 § 1C, in its application to employment situations, is broader and "ensures that *all* employees are protected against sexual harassment in the workplace, whether or not their employers fit within the definition of the term employer in ch. 151B. Thus, employees who cannot file claims with the MCAD because of the limited size of the

workforce ... are protected by § 1C." *Id.* at 812 (emphasis in original) (citation omitted); *see also Vicarelli v. Business International, Inc.,* 973 F.Supp. 241, 243–45 (D.Mass.1997). Thus, in employment situations in which ch. 151B is not applicable, an employee may bring a claim for sexual harassment pursuant to ch. 214 § 1C. *See Guzman,* 664 N.E.2d at 822 ("Where, as here, G.L. c. 151B does not apply, an employee may bring a claim under G.L. c. 214 § 1C.").

The distinction between whether a claim falls under ch. 151B or ch. 214 § 1C can be important because, as noted above, no prior filing of a discrimination (or sexual harassment) charge with the MCAD is required with respect to a claim under ch. 214 § 1C. *See Guzman,* 664 N.E.2d at 822 ("Employees of larger concerns [to which ch. 151B applies] must pursue their claims first at the [MCAD], while employees of smaller scale employers [to which ch. 151B does not apply] can bypass the MCAD and bring their actions directly in the Superior Court."). If ch. 151B applies here, then Chapin's claim for direct harassment against Theokas fails, because Chapin, as noted above, has not met the requirement of first filing an administrative charge with the MCAD against Theokas as to this claim.

Chapin alleges that Theokas is liable for harassing her under the aiding and abetting language of ch. 151B § 4(5). Whether or not this section applies to create liability for direct harassment, *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995) (interpreting New York law as holding that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable" for aiding and abetting discrimination), it is clear that other provisions of ch. 151B do create such individual liability for direct harassment. *See, e.g.,* ch. 151B § 4(4A) (making it illegal "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter"); ch. 151B § 4(5) (making it illegal not only for a person to aid or abet discrimination, but also making it illegal "[f]or any person ... to ... incite, compel or coerce the doing of any of the acts forbidden under this chapter"); *see generally Ruffino,* 908 F.Supp. at 1048 (finding individual liability for acts of discrimination under ch. 151B). Because an action lies under ch. 151B against a supervisory employee for direct harassment, ch. 151B is the exclusive remedy for Chapin's sexual harassment claim. She therefore may not seek relief under ch. 214 § 1C. *See Green,* 664 N.E.2d at 811. Accordingly, Chapin's claim under ch. 214 § 1C for direct harassment by Theokas will be dismissed.[6]

### c. § 1983

Theokas makes the same argument as Rowe, that the claim under 42 U.S.C. § 1983 must be dismissed. As explained above, the court disagrees and accordingly denies the motion to dismiss the § 1983 claim as to Theokas.

### d. Common Law Tort Claims

Finally, Theokas argues that ch. 151B's exclusivity provisions[7] mandate the dismissal of Chapin's common law tort claims for assault and battery (count five) and intentional infliction of emotional distress (count six). The Supreme Judicial Court, however, has concluded that ch. 151B was intended to broaden, not narrow, the rights of employees. Hence, common law rights that existed before the adoption of ch. 151B are not barred by the exclusivity provisions. "Although G.L. c. 151B is a comprehensive statute in

---

**6.** Although Defendant Parent has not filed a motion to dismiss, it follows from this ruling that the claim against him pursuant to ch. 214 § 1C must also be dismissed. Parent, however, was named as a respondent in the administrative charge. The ch. 151B claim against him therefore remains.

**7.** At oral argument, counsel for Theokas also argued that the claims were barred by the exclusivity provision of the Worker's Compensation Act, M.G.L. ch. 152 §§ 15, 24. Because this argument had not previously been raised, the court offered the plaintiff an opportunity to brief this issue. No brief was submitted and the court, therefore, declines to address this issue. The court has, however, briefly discussed certain aspects of the exclusivity provisions of the Workers Compensation Act in a recent case. *See Chatman,* 973 F.Supp. at 239–40.

the sense that it covers various acts and practices where the possibility for discrimination is evident, we do not view the statute as tending to narrow or eliminate a person's common law rights where applicable." *Comey v. Hill*, 387 Mass. 11, 438 N.E.2d 811, 817 (1982); *see also Green*, 664 N.E.2d at 811 (citing *Comey* for the proposition that "claimants may bring common law claims against employers which are grounded in tort and contract principles established prior to adoption of c. 151B"). All that remains then is to determine whether the causes of action alleged by Chapin existed before the adoption of ch. 151B.

This question is not a difficult one. A claim for assault and battery could clearly be brought before the adoption of ch. 151B. Chapter 151B was first enacted in 1946. 1946 Mass. Acts c. 368 § 4. Claims in tort for assault and battery have existed in the common law in Massachusetts at least since the Nineteenth Century. *See, e.g., Brown v. Kendall*, 60 Mass. (6 Cush.) 292 (1850) (civil action of trespass for assault and battery). As for intentional infliction of emotional distress, the Supreme Judicial Court has recently held that such a claim is specifically not barred by the exclusivity provision of ch. 151B. *See Green*, 422 Mass. at 558, 664 N.E.2d 808. Theokas' motion to dismiss the common law claims based upon ch. 151B's exclusivity provision must, therefore, be denied.

*Summary*

 Defendant Rowe's motion to dismiss counts two and four is DENIED. Defendant Theokas' motion to dismiss is GRANTED, as to the claim in count two that he is liable for direct harassment under ch. 151B and as to the claim of his liability under ch. 214 § 1C (count three). The motion is GRANTED as to the claim in count two that Theokas is liable for failing to act after being informed of sexual harassment of Chapin by Parent; but as to this claim, leave is given to Chapin to amend the complaint, provided any such amendment is filed not later than ten days

from the date of this memorandum and order. In all other respects, the motion of defendant Theokas is DENIED (counts four, five and six). Count Three is DISMISSED, sua sponte, as to defendant Parent.[8]

So ordered.

---

8. Normally, a count cannot be dismissed *sua sponte* without notice to the parties. Here, such action is appropriate, as Chapin has had an opportunity to present the arguments applicable to Parent in arguing the motions herein decided.