IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2001 Session

## DEBORAH HARRIS v. HOWELL B. DALTON and MEDICAL ASSOCIATES, P.C.

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 970825     Hon. W. Frank Brown, III, Chancellor**

**FILED APRIL 26, 2001**

**No. E2000-02115-COA-R3-CV**

In this action for sexual harassment, the jury returned verdicts for plaintiff. Responding to a motion J.N.O.V., the Trial Judge entered judgment for defendants. Plaintiff appealed. We reverse and remand for a new trial.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded for a New Trial.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Pamela R. O'Dwyer and Randall D. Larramore, Chattanooga, Tennessee, for Appellant, Deborah L. Harris.

William H. Horton, Chattanooga, Tennessee, for Appellee, Medical Associates, P.C.

**OPINION**

Plaintiff's action for sexual harassment against defendants Dr. Howell Dalton ("Dalton") and Medical Associates, P.C., ("MAPC"), is based on allegations of a hostile work environment, and that she suffered emotional distress as a result, and was retaliated against, all in

violation of Tennessee Code Annotated §4-21-301 (the Tennessee Human Rights Act).

An extended trial was held before a jury, and the jury returned verdicts and answered interrogatories. Among the jury's finding was that Dr. Dalton was plaintiff's supervisor, Dalton aided and abetted MAPC in creating a hostile work environment, and that said work environment seriously affected plaintiff's physical and mental well-being. The jury found defendants liable and awarded $75,000.00 against Dalton.

Defendants filed motions for a judgment notwithstanding the verdict, along with other motions, and the Trial Judge then ruled in pertinent part that plaintiff had failed to prove a continuing violation by defendants and thus, her claim was barred by the one-year statute of limitations. The Court also found that plaintiff failed to prove harassment in its legal sense, and further that the plaintiff failed to prove that Dalton was liable "as an accomplice". The Court granted defendants' motions for JNOV. Plaintiff has appealed, raising numerous issues.

The standard of review regarding a JNOV is well-settled:

A post-trial motion for the entry of judgment in accordance with a motion for a directed verdict made during the trial must be gauged by the usual rules relating to directed verdicts. Those rules require that the trial judge, and the appellate courts, **take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion.**

*Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn.1977) (emphasis added).

The Trial Court held that defendants were entitled to judgment because plaintiff's claim was time-barred. Specifically, the Court found that plaintiff had alleged three separate and discrete acts by Dalton, and that those acts occurred more than one year prior to the filing of the Complaint. The Court further found that the numerous acts complained of were not sexual or offensive. For example, the testimony about Dalton's "growling".

The Trial Court correctly quoted from the case of *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884 (Tenn. 1996), wherein the Supreme Court adopted the continuing violation doctrine that had developed in the federal case law, and stated that it "relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period". In *Spicer,* the Court articulated that in order to show a continuing violation, the plaintiff has to show a series of related acts, one or more of which falls within the limitations period. *Id.* Further, the Court explained that the factors to be considered in determining whether the acts constitute a continuing violation are: 1) whether the acts involve the same type of discrimination, 2) whether the acts are recurring, and 3)

whether the acts have a degree of permanence which would trigger the employee's awareness of and duty to assert her rights. *Id.*

In this case, taking the strongest view of the evidence in plaintiff's favor,[1] there is no question that the acts complained of constituted a continuing violation pursuant to the above analysis. There is substantial material evidence that the acts complained of constituted a continuing violation pursuant to the *Spicer* analysis. Plaintiff and several other witnesses described an ongoing pattern of conduct by Dalton which involved the same type of offensive sexual conduct, and which was permanent in the sense the acts were continuous for a period of three or more years, up and until the plaintiff left her employment. Plaintiff not only described the offensive comments which Dalton made directly to her, but also described offensive comments he made about patients and other employees.[2] Other witnesses also described Dalton's ongoing, sexually offensive behavior and comments toward females in general.

Several witnesses testified to the growling behavior by Dalton, and the testimony was unrefuted that this growling was sexual in nature and was only directed toward women. The growling was variously described as "perverted" and "like a dog in heat". There is ample material evidence that the acts creating the hostile work environment were reoccurring and continued within one year of the bringing of this action.

The Trial Court also granted defendants' JNOV based upon it's finding that plaintiff had failed to prove sexual harassment in its legal sense.

Generally, a cause of action for sexual harassment does not occur until the working environment has become sufficiently hostile or abusive that it alters the employee's working conditions, and that a determination on this issue must be made by looking at the totality of the circumstances. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996); *Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679 (Tenn. Ct. App. 1991). Courts are required to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and the employee's psychological well-being." *Campbell* at 32. Moreover, a plaintiff does not have to be the direct object of the harassing conduct. *Wood v. Emerson Electric Co.*, 1994 WL 716270 (Tenn. Ct. App. Aug. 12, 1994).

---

[1]Throughout the portion of the Court's Memorandum Opinion and Order dealing with the JNOV issues, the Trial Court repeatedly cites to evidence contrary to that raised by plaintiff, and draws inferences which are in defendants' favor, all of which is improper under the JNOV standards.

[2]Offensive behavior in the context of a hostile work environment does not necessarily have to be directed at the plaintiff in order for her to prevail on a claim of hostile work environment.

The Supreme Court set forth in *Campbell* what the plaintiff has to prove in order to prevail in a hostile work environment sexual harassment claim. We hold plaintiff met the requirements of *Campbell.*

There is no dispute that plaintiff is a member of a protected class, and there is material evidence that she was subjected to unwelcome sexual harassment because of her gender, and that this harassment affected her ability to perform her job and affected her mental and physical well-being. Plaintiff likewise presented material evidence to establish that the management at MAPC was aware that this behavior was occurring, and that several witnesses testified that the behavior was open and notorious and that other doctors were often present when it happened, and that Dalton himself brought it to the other doctors' attention. There is evidence that management personnel had been alerted by several people that Dalton was engaging in offensive conduct, and that it was a general topic of discussion in and around the workplace. Further, there was evidence to establish that doctors were in a position of supervisory authority over all staff members, had authority to hire and fire, and had input in staffing decisions. Further, they were not treated the same by management in that the personnel files were not kept on the doctors because the doctors could only be disciplined by the Board.

Our Supreme Court in *Parker v. Warren County Utility District*, 2 S.W.3d 170 (Tenn. 1999) held: "We hold that under the THRA, an employer is subject to vicarious liability to a victimized employee for actionable hostile work environment sexual harassment by a supervisor, with immediate (or successively higher) authority over the employee. The defending employer may raise an affirmative defense to liability or damages where no tangible employment action has been taken". *Id.* 176.

There is material evidence to support a finding that the employer was vicariously liable. *Parker.* Moreover, the employer could not raise affirmative defenses because plaintiff offered material evidence that a tangible employment action was taken against her. She was transferred to another facility against her will and was given no position in this new facility and was only told that she should sit in a room and copy charts, whereas before she had sufficiently more public interaction and responsibility. Also, the new office had different hours which created a child care dilemma for her and she was given the "cold shoulder" treatment by the employees in that department.

Material evidence clearly establishes that plaintiff was subject to a hostile work environment and sexual harassment, and the Trial Court erred in granting a JNOV on this issue.

The Trial Court granted a JNOV to Dalton for an additional reason, the Court found that Dalton had no accomplice liability under THRA. The Supreme Court has previously held that there can be no individual liability under THRA unless the individual aids, abets, incites, compels, or commands the employer to engage in discrimination (accomplice liability). *Carr v. United Parcel Service*, 955 S.W.2d 832 (Tenn. 1997); Tenn. Code. Ann. §4-21-301. In *Carr*, the Court defined

"aiding and abetting" as knowing that the employer was breaching a duty, and giving "substantial assistance or encouragement to them in their acts". *Id.* at 836. The Court thus held that to make a finding of accomplice liability for a supervisor in a hostile work environment, there must be a showing that the supervisor encouraged or prevented the employer from taking corrective action. *Id.*[3]

In *Carr* the Supreme Court said:

> We hold that, for the purpose of deciding accomplice liability, a claim of supervisor created hostile work environment should be subject to the same analysis as the claim on a co-worker harassment. Generally, the supervisor and the employer do not share a community of purposes when the employer fails to respond appropriately to the supervisor's harassing conduct. A supervisor, however, may be individually liable for encouraging or preventing the employer from taking corrective action . . . ."

p. 838.

There is material evidence to find supervisor Dalton liable for "encouraging or preventing the employer from taking corrective action". *Accord: Steele v. Superior Home Health Care of Chattanooga, Inc.*, 1998 WL 783348 (Tenn. Ct. App. Nov. 10, 1998).

In this case, the supervisor, Dalton, denied any improper behavior, and that denial was intended to discourage the employer from taking any corrective action to remedy the hostile environment that existed. The record shows that Dalton's denial was taken at face value, and no additional investigation into the allegation was made. There is material evidence that MAPC knew or should have known that Dalton was engaged in sexually offensive behavior toward plaintiff and other female employees, and there were other complaints regarding his behavior both formal and informal. When Dalton was finally confronted with the accusations, he denied any improper conduct and urged MAPC to "get rid" of the plaintiff. We hold there is material evidence that Dalton was guilty of aiding and abetting MAPC in the continuing hostile work environment in that his denial effectively ended the inquiry into the allegations and hence, nothing was done to actually correct the situation. We hold the Trial Court erred in granting Dalton a JNOV on this issue, as well.

Next, plaintiff argues the Trial Court erred in granting defendants a new trial.

---

[3]Cf. this holding with other jurisdictions which have similar aiding and abetting provisions in their State human rights statutes. Most courts have held that interaction can constitute aiding and abetting if it provides "substantial assistance or encouragement", that liability for aiding and abetting does not depend upon an intent to discriminate, and that the actual harassment itself can constitute aiding and abetting. *See Gardenhire v. New Jersey Manufacturers Ins. Co.*, 754 A.2d 1244 (N.J. Super. Ct. Law Div. 2000); *Bogdahn v. Hamilton Standard Space Sys. Int'l. Inc.,* 741 A.2d 1003 (Conn. Super. Ct. 1999); *Chapin v. University of Massachusetts*, 977 F.Supp. 72 (D. Mass. 1997); *Colorado Civil Rights Comm. V. Travelers Ins. Co.*, 759 P.2d 1358 (Colo. 1988).

Pursuant to Tenn. R. Civ. P. 50.03, the Trial Court is instructed to rule on the motion for a new trial in addition to ruling on a motion for a directed verdict, so if the judgment on the directed verdict is reversed on appeal, the new trial can proceed "unless the appellate court has otherwise ordered". Thus, it was proper for the Trial Court to conditionally grant defendants' motion for a new trial, even though the JNOV had been granted.

Once the Trial Court has granted a motion for a new trial and expressed his disagreement with the jury's verdict as a thirteenth juror, as was done in this case, the granting of a new trial generally will not be reversed by the appellate courts. *See Holmes v. Wilson*, 551 S.W.2d 682 (Tenn. 1997). Since the Trial Court in this case has ruled the jury's verdict was not supported by the weight of the evidence and that a new trial should be granted to all parties on all issues,[4] we remand for a new trial on all issues.[5]

For the foregoing reasons, we reverse the judgment of the Trial Court and remand for a new trial on all issues. The cost of the appeal is assessed to defendants Dalton and Medical Associates, P.C.

_____
Herschel Pickens Franks, J.

[4]The Trial Court specifically found that if the JNOV was reversed, then all parties should have a new trial on all issues.

[5]Tenn. R. Civ. P. 59.06 provides that "upon the request of either party the new trial shall be conducted by a different circuit judge or chancellor".